1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LUIS APONTE and JENNIFER SELF,<br><br>                              Plaintiffs,<br><br>  v.<br><br>MASON COUNTY FIRE PROTECTION<br>DISTRICT NO. 16 a/k/a WEST MASON<br>FIRE,<br><br>                              Defendant. | No. 3:21-cv-5459<br><br>COMPLAINT |

COME NOW the Plaintiffs, LUIS APONTE and JENNIFER SELF, by and through their

attorney Andrew P. Green of Green & Wilmot, PLLC, and for causes of action against the

Defendant, state and allege as follows:

## I.     PARTIES, JURISDICTION, AND VENUE

1.1     Plaintiff Luis Aponte ("Aponte") is a resident of Mason County, Washington.

1.2     Plaintiff Jennifer Self ("Self") is a resident of Pierce County, Washington.

1.3     Defendant Mason County Fire Protection District No. 16, also known as West

Mason Fire (the "Fire District"), was and is a public fire protection district organized under the

laws of the State of Washington, providing emergency medical services in Mason County,

COMPLAINT – No. 3:21-cv-5459

Page 1

Washington.  All acts, omissions, and conduct complained of herein were performed or committed by the Fire District's employees and/or agents, acting within the scope of their employment and authority, for which the Fire District has legal liability.

1.4     The events giving rise to the causes of action herein occurred in Mason County, Washington.

1.5     The Fire District has failed to appoint an agent to receive any claim for damages made under Chapter 4.96 RCW and/or has failed to record with the Mason County auditor the identity or address of any agent to receive any claim for damages made under Chapter 4.96 RCW.

1.6     This Court has jurisdiction over the Fire District and the subject matter herein, and venue is proper in this Court.

## II.      FACTUAL BACKGROUND

2.1     Plaintiffs incorporate herein all previous allegations in this Complaint.

2.2     The Fire District employed Aponte as a firefighter/emergency medical technician ("EMT") from approximately July 2018 to January 17, 2020.

2.3     The Fire District employed Self as a firefighter/EMT from approximately August 2019 to February 12, 2020.

2.4     The Fire District compensated Aponte and Self (collectively "Plaintiffs") for their work as firefighters/EMTs by paying them as follows:

      2.4.1    $100.00 per shift for a 24-hour shift;

      2.4.2    $50.00 per shift for a 12-hour shift;

      2.4.3    $25.00 per shift for a 6-hour shift;

LAW OFFICES
GREEN & WILMOT, PLLC
1919 N. Pearl St., Ste B-3
Tacoma, WA  98406
TEL: (253) 625-7300 / FAX: (253) 292-0832

2.4.4   $15.00 per hour in 2018 and $20.00 per hour in 2019 and 2020 for emergency medical services the Fire District provided under a service contract for a local race track; and

2.4.5   Additional sums based upon on a point system determined by the Fire District.

2.5     During their 24-hour, 12-hour, and 6-hour shifts, the Fire District required Plaintiffs to be present at the fire station, ready to respond promptly to calls, and prepared mentally and physically to respond to any potential type of emergency.

2.6     In 2020, the U.S. Department of Labor's Wage and Hour Division ("WHD") investigated the Fire District for potential violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, covering the period of May 5, 2018 to May 2, 2020.

2.7     After conducting its investigation, WHD concluded the Fire District misclassified the Plaintiffs and other firefighter/EMTs as volunteers, and found the Fire District committed twenty-nine (29) violations under the FLSA, including for failing to pay them $7.25 per hour (federal minimum wage) and failing to pay them proper overtime compensation for overtime hours they worked.  A true and correct copy (with FOIA exemption redactions) of WHD's Compliance Action Report regarding its investigation of the Fire District's FLSA violations is attached hereto as <u>Exhibit A</u> and incorporated herein by reference.

2.8     The Fire District implemented a formal policy and procedure system for the Fire District's operations and adopted a Standard Operating Procedures manual ("SOP Manual").

2.9     The SOP Manual includes policies and procedures regarding workplace safety, safety standards for firefighters, anti-harassment, and personnel disciplinary actions.

LAW OFFICES
GREEN & WILMOT, PLLC
1919 N. Pearl St., Ste B-3
Tacoma, WA  98406
TEL: (253) 625-7300 / FAX: (253) 292-0832

2.10    The SOP Manual contains policies and procedures that make promises of specific treatment in specific situations.

2.11    The Plaintiffs justifiably relied upon the policies and procedures contained in the SOP Manual and continued their employment.

2.12    Plaintiffs submitted multiple complaints to the Fire District about workplace and firefighter safety issues.

2.13    Plaintiffs submitted multiple complaints to the Fire District about workplace harassment.

2.14    On January 17, 2020, the Fire District terminated Aponte's employment under false pretenses.

2.15    On February 12, 2020, the Fire District terminated Self's employment under false pretenses.

2.16    The Fire District failed to comply with the provisions of its SOP Manual, including those regarding workplace safety, safety standards for firefighters, anti-harassment, and personnel disciplinary actions.

2.17    The Plaintiffs' complaints about workplace and/or firefighter safety issues were a substantial factor in the Fire District's decision to terminate their employment.

### III.    FIRST CAUSE OF ACTION:  FLSA VIOLATIONS (MINIMUM WAGE)

3.1    Plaintiffs incorporate herein all previous allegations in this Complaint.

3.2    At all relevant times, the Fire District was an employer covered under the FLSA.

3.3    At all relevant times, Plaintiffs were employees covered under the FLSA.

3.4    The Fire District failed to pay Plaintiffs the applicable minimum wage for all hours worked, in violation of the FLSA.

COMPLAINT – No. 3:21-cv-5459

Page 4

3.5     The Fire District's conduct described above was willful.

3.6     Plaintiffs are entitled to recover their unpaid minimum wages due and an equal amount as liquidated damages.

3.7     Plaintiffs are entitled to recover their attorney's fees incurred herein pursuant to 29 U.S.C. §216.

## IV.     SECOND CAUSE OF ACTION:  FLSA VIOLATIONS (OVERTIME)

4.1     Plaintiffs incorporate herein all previous allegations in this Complaint.

4.2     At all relevant times, the Fire District was an employer covered under the FLSA.

4.3     At all relevant times, Plaintiffs were employees covered under the FLSA.

4.4     The Fire District failed to pay Plaintiffs proper overtime compensation for all work weeks in which they worked in excess of forty (40) hours, in violation of the FLSA. Alternatively, the Fire District failed to pay Plaintiffs proper overtime compensation for all work weeks in which they worked in excess of fifty-three (53) hours, in violation of the FLSA.

4.5     The Fire District's conduct described above was willful.

4.6     Plaintiffs are entitled to recover their unpaid overtime compensation and an equal amount as liquidated damages.

4.7     Plaintiffs are entitled to recover their attorney's fees incurred herein pursuant to 29 U.S.C. §216.

## V.     THIRD CAUSE OF ACTION:  BREACH OF POLICIES

5.1     Plaintiffs incorporate herein all previous allegations in this Complaint.

5.2     Policies contained in the SOP Manual constituted a contract or an implied contract, and made promises of specific treatment in specific circumstances.

5.3     The Fire District breached the provisions of the SOP Manual.

LAW OFFICES
GREEN & WILMOT, PLLC
1919 N. Pearl St., Ste B-3
Tacoma, WA  98406
TEL: (253) 625-7300 / FAX: (253) 292-0832

5.4     As a result of the breach, the Plaintiffs have suffered damages.

## VI.     FOURTH CAUSE OF ACTION:  WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

6.1     Plaintiffs incorporate herein all previous allegations in this Complaint.

6.2     There is a clear mandate of public policy in Washington that employers shall ensure employee safety in the workplace.

6.3     There is a clear mandate of public policy in Washington that fire departments shall ensure certain safety standards for firefighters in their employ.

6.4     Plaintiffs reported what they reasonably believed to be unsafe conditions in their workplace and/or violations of laws and policies related to safety standards for firefighters.

6.5     The Plaintiffs' reports regarding workplace and/or firefighter safety issues were a substantial factor in the Fire District's decision to terminate their employment.

6.6     As a result of the Fire District's wrongful termination of their employment in violation of public policy, the Plaintiffs have suffered economic damages, including lost wages and benefits, and non-economic damages for emotional distress, loss of enjoyment of life, humiliation, personal indignity, anger, and embarrassment.

### *PRAYER FOR RELIEF*

WHEREFORE, having set forth their Complaint against Defendant, Plaintiffs pray for the following relief:

1.     An award of economic damages in amounts to be proven at trial, including unpaid minimum wages, unpaid overtime compensation, back pay, front pay, and loss of benefits;

2.     An award of liquidated damages equal to the amounts of unpaid minimum wages and unpaid overtime compensation;

LAW OFFICES
GREEN & WILMOT, PLLC
1919 N. Pearl St., Ste B-3
Tacoma, WA  98406
TEL: (253) 625-7300 / FAX: (253) 292-0832

1    3.    An award of non-economic damages in amounts to be proven at trial;

2    4.    An award of costs and attorney's fees pursuant to 29 U.S.C. §216 and/or RCW

3    49.48.030;

4    5.    An award of prejudgment and post-judgment interest; and

5    6.    An award of such other and further relief in favor of Plaintiffs as the Court

6    deems just and equitable.

7    DATED this __24th__ day of June, 2021.

8    GREEN & WILMOT, PLLC

9

10   By:___*s/ Andrew P. Green*___
         Andrew P. Green, WSBA #32742
11       1919 N. Pearl St., Ste. B-3
         Tacoma, WA  98406
12       Telephone: (253) 625-7300
         Fax: (253) 292-0832
13       E-mail: andy@green-wilmot.com
         *Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit  A

## WHISARD Compliance Action Report

### U.S. Department of Labor
Wage and Hour Division

| | | | |
|---|---|---|---|
| Case ID: | **1910755** | Originating District: | **Seattle District Office** |
| Local Filing Number: | **2020-323-08991** | Investigating. District: | **Seattle District Office** |
| WHMIS Case Number: | | Lead Investigator: | (b)(6); (b)(7)(C) |
| Registration Date: | **05/06/2020** | | |
| Assignment Date: | **05/06/2020** | | |

### Employer Information

Trade Name: **Mason County Fire District 16**

Legal Name: **Fire Protection Dist. #16 Mason County**

Address: **4650 W Dayton Airport Rd
Shelton WA 98584**

EIN: **91-1365017**
County: **Mason**
NAICS Code: **09620**
No. Of Employees: **16**

### Investigation Information

| | | | |
|---|---|---|---|
| Period Investigated From: | **05/05/2018** | BNPI: | |
| To: | **05/02/2020** | Reinvestigation: | ☐ |
| Investigation Type: | (b)(7)(E) | Recurring Violation: | ☐ |
| Investigation Tool: | | Future Compliance Agreed: | ☐ |
| Compliance Status: | **Agree to Comply** | Involved in AG: | ☐ |

### Recommended Action:

| | | | |
|---|---|---|---|
| BWFS: | ☐ | RO/NO Review: | ☐ |
| CMP: | ☐ | Follow Up Investigation: | ☐ |
| Litigation: | ☐ | Other Action: | ☐ |
| Civil Action: | ☐ | Denial of Future Certificate: | ☐ |
| Criminal Action: | ☐ | BW Payment Deadline: | |
| Submit For Opinion: | ☐ | Trailer forms attached: | ☐ |

### CL

| Violation / Compliance Status | Violations | | CMPs* |
|---|---|---|---|
| **No Violation found for this act / Compliance (no violations found)** | | **$0.00** | **$0.00** |

Date: 04/22/2021 12:06:37 PM                    Case ID:  1910755                                                    Page 1

## WHISARD Compliance Action Report

### FLSA

| Violation / Compliance Status | Violations | EEs ATP | BWs Computed | BWs Agreed | LDs Computed | LDs Agreed | CMPs* |
|---|---|---|---|---|---|---|---|
| *Failure to pay Minimum Wage / Agree to Comply* | *14* | *10* | *$10,141.23* | *$0.00* | *$0.00* | *$0.00* | |
| *Failure to pay proper overtime / Agree to Comply* | *14* | *9* | *$40,253.75* | *$0.00* | *$0.00* | *$0.00* | |
| *Failure to keep accurate records / Agree to Comply* | *1* | *0* | *$0.00* | *$0.00* | *$0.00* | *$0.00* | |
| *FLSA Totals:* | *11* | *14* | *$50,394.98* | *$0.00* | *$0.00* | *$0.00* | |
| *Total Violations Under FLSA:* | | *29* | | | | | *$0.00* |

*\* CMPs computed do not necessarily indicate CMPs assessed.*

| | | | |
|---|---|---|---|
| Unduplicated Employees Found: | *11* | Unduplicated Employees Agreed: | *0* |
| Total Amount BWs Computed: | *$50,394.98* | Total Amount BWs Agreed: | *$0.00* |
| Total Amount LDs Computed: | *$0.00* | Total Amount LDs Agreed: | *$0.00* |

### Conclusions & Recommendations:

*ER's covered under Sec.3(s)(1)(C) of FLSA. MW vio: ER misclassified FFs/EMTs & paid less than $7.25/hr, OT vio:ER had failed to pay non-exempt EEs OT at T1/2. RK vio.: timesheets & pay records incomplete, pay records didn't reflect pays accurately. FC w/atty on 1/26/2021. Attorney stated intended to be in compliance ,but didn't agree to findings, & RTP.* [(b)(7)(E)] *Pubs: 553, FS 44, HRG, FS 77a, . Rec: 2nd level conference.*

WHI Signature:_____ Date: **02/25/2021**

Reviewed By:_____ Date:_____

Mason County Fire District 16 Case ID: 1910755

Mason County Fire Protection District No. 16
Dba: West Mason Fire
(was dba. Mason County Fire District 16)
4650 W. Dayton Airport Rd.
Shelton, WA 98584

EIN # 91-1365017

## FLSA NARRATIVE

> (b)(7)(E)

Coverage:

The subject firm is a Mason County Fire department. The Mason County Fire Protection District 16 is located in Shelton, WA. it provides fire protection and emergency response services to the Shelton community. In addition to responding to fires, it also responds to medical emergencies, motor vehicle accidents, flood & technical rescues, and other rescue calls. It's established in Nov 1977 as a municipal corporation in the State of WA. In Nov 2018, the Mason County Fire District 16 merged with the Mason County Fire District 9 and formed the West Mason Fire. The main office of the West Mason Fire is located on 4650 W. Dayton Airport Rd., Shelton, WA. The subject employer has total 4 fire stations and currently employs 6 career Firefighters / Emergency Medical Technicians (EMTs) and 20 volunteer Firefighters /EMTs. This employer is covered by the FLSA under Sec. 3(s)(1)(C) of the Act. (exh. C-1 to C-5)

Fire Stations:
Fire Station 16-1: 4650 W. Dayton Airport Rd., Shelton, WA 98584. 360-427-7343.
Fire Station 16-2: 140 W. Shelton Valley Rd., Shelton, WA 98584. No telephone.
Fire Station 9-1: 2320 W. Skokomish Vaeely Rd., Shelton, WA 98584. No telephone.
Fire Station 9-2 (garage): 50 E. Road Runner Dr., Shelton, WA 98584. No telephone.

3(d) Employer:

Commissioners:
Carly Bean / Robert Burbridge / Shelley George / Irvin Leister / William Reed /

Officers:
Matthew Welander, Fire Chief. 4650 W. Dayton Airport Rd., Shelton, WA 98584. 360-426-7343.
William Howell, Training Officer / Firefighter.

Mason County Fire District 16 Case ID: 1910755

Employer:

The MCFD 16 is the employer of these misclassified firefighters and EMTs for the following reasons: (exh. B-1 to B-8)

1. Firefighters/EMTs filled out applications and applied the job with West Mason Fire and had interview with the officer of the MCFD 16 - which is the Fire Chief.
2. Firefighters/EMTs were offered the shifts to worked & allowed to sign up for the shifts, and allowed to work those shifts, and they had worked those shifts. (Permit and Suffer to work)
3. Officers of MCFD 16 supervised those firefighters/EMTs.
4. MCFD 16 processed payrolls and paid those firefighters and EMTs as employees and deducted all applicable payroll taxes. (exh. D-8 to D-10)

Joint Employment / Mason County Fire District 16 (MCFD 16) and Ridge Motorsports (racetrack): (exh. B-1 to B-8)

It doesn't appear there's any joint employment between MCFD16 and Ridge Motorsports for the following reasons:

1. Per employees' statements, MCFD 16 interviewed and hired all firefighters (FFs)/EMTs. Ridge Motorsports didn't.
2. Per employees' statements, MCFD 16 supervises FFs/EMTs and set their work schedules. Ridge Motorsports didn't.
3. Per employees' statements and payroll records, MCFD 16 set all FFs/EMTs pay rates and determines the method of payments, and processes the payrolls for all FFs/EMTs. Ridge Motorsports didn't.
4. MCFD 16 maintains all FFs/EMTs employment records, such as employee's information, timesheets, and payrolls. Ridge Motorsports didn't.
5. The only connection between MCFD16 and Ridge Motorsports is the contract for service.

Period of investigation:  5/5/2018 to 5/2/2020

MODO:
Seattle, WA DO is the MODO. The MODO has been set up and the case has been associated with the MODO.

Prior History:   None

1099s:  The employer stated the misclassified volunteer firefighters/EMTs were provided 1099s for the volunteer work.

Sec.16 (b): None.

Mason County Fire District 16 Case ID: 1910755

**Exemptions:**

541 Exemptions:
None claimed.

Fire Chief, Matthew Welander, was qualified for 541 exemptions. He's paid salary S7500 annually. His primary duty is management. He's in charge of daily operation of the fire district. He supervises all the employees and firefighters, including volunteers. He can hire or fire employees and firefighters (including volunteers), and have authority to make decisions.

All other employees and firefighters were not qualified for 541 exemptions. They're paid either by the hour or by shift rate, and the total earning for each pay period were different amounts based on the number of hours worked. Their primary duty is not in management and they didn't supervise any employees.

7(k) Exemption:
7 (K) Exemption was applicable to Firefighters / Emergency Medical Technicians (EMTs). The employer has stated the work period is 7-consercutive days.

13(b)(20)  overtime exemption:

13(b)(20) exemption was not applicable.

The employer has misclassified most of the firefighters as volunteers. The employer has total more than 5 career firefighters (employees) at all time when counting the misclassified firefighters as employees. (exh. D-2, D-8 to D-10)

**Status of Compliance:**

Complainant Data:

A former employee of the West Mason Fire (Mason County Fire District 16, MCFD16) contacted WHD and alleged that the employer had misclassified the firefighters/EMTs as volunteers, and failed to pay overtime hours worked at T1/2.

> (b)(7)(E)

Misclassification of Volunteer Firefighters / Emergency Medical Technicians (EMTs):

The employer has employed total 39 firefighters/EMTs during the investigation period. Some have worked as career firefighters/EMTs, some have worked as both career and volunteer firefighters/EMTs, and some have worked as volunteer firefighters/EMTs only.  The employer has paid them for the firefighting/EMTs duties they performed by the hour and by the shift.

Mason County Fire District 16 Case ID: 1910755

After thoroughly reviewing and analyzing all the information available, it's determined that the firefighters/EMTs were misclassified as volunteers and should have been classified as the employees of the MCFD 16.

The volunteer firefighters/EMTs were considered misclassified as volunteers for the following reasons:

1. An individual shall not be considered a volunteer if the individual is otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.

   Most of the firefighters/EMTs are the employees of the MCFD 16, and they had also performed the same type of services for this same public agency at the fire stations as volunteer.  (exh. C-2, B-1 to B-8)

   MCFD 16 has a service contract with Ridge Motorsports Park (race track) to provide the Emergency Medical services. MCFD 16 is to provide the Emergency Medical Techs (EMTs) and ambulance for the racing events per contract.

   When the firefighters/EMTs worked at the race track, they're classified as employees and were paid $15 per hour in 2018 and $20 per hour in 2019 and 2020, but when they worked at the fire stations for the same type of services (emergency medical services), the employer classified them as volunteers, and were paid $100 for a 24-hour shift, $50 for a 12-hour shift.

2. They expected to be paid for their services and were promised to be paid if they worked.

   The firefighters/EMTs stated they applied for this job because they needed the money, and they were told they would be paid if they worked, and they knew exactly how much they would be paid because the employer provided them a set of pay schedule by the shift.  (exh. C-2, B-1 to B-8, D-7)

3. The fees paid to the volunteers were tied to the productivity.

   The volunteer firefighters/EMTs were paid based on the type of shift (24-hour or 12-hour) and the number of shifts they worked. The pays are $100 per shift for the 24-hour shift, $50 per shift for the 12-hours shift. The employer's pay period is monthly.

   The volunteer firefighters/EMTs were paid different total amounts every pay period (every month) based on the number of shifts they have worked in that month; it's based on the amount of time they engaged in the "volunteer activity". This is an indication of a substitute for compensation and it's tied to the productivity. (exh. D-8 to D-10)

Mason County Fire District 16 Case ID: 1910755

The volunteer firefighters/EMTs also received "Reimbursement" for incidental expenses, in addition to the stipends they received for working on shifts. The "Reimbursement" is based on the "Points" earned throughout the years. (exh. C-4c)

4. They have received payments that can't be considered as nominal fee.

**The pays of volunteer firefighters/EMTs of this subject employer:**
The volunteer firefighters' stipends were $100 per shift for the 24-hour shift, $50 per shift for the 12-hours shift.

Hourly Rate:
The hourly rate for the volunteer shift is S4.17 per hour. It's $100/24hr=$4.17 per hour or $50/12hr=$4.17 per hour.

**The pays of career firefighters/EMTs of this subject employer:**
The subject employer's career firefighters/EMT were paid $15 per hour in 2018 and $20 hour in 2019 and 2020.

Starting March 2020, the employer received funding from FEMA due to the COVID-19 pandemic and started paying the volunteer firefighters/EMTs who work at the fire stations by the hour for S15 per hour, and has re-classified some of them as "temporary employees".

**The pays of other career firefighters/EMTs:**

Per information obtained, the neighboring fire districts paid the entry level career firefighter/EMTs around S3000 per month, or at $16-S18 per hour. (exh. B-1, B-2, B-6)

Per research conducted, average pays for career firefighters/EMTs are as below:
1) there's a Mason County Firefighter job posting in 2019 that would pay $5379 per month for an experienced career firefighter/EMT. (exh. D-11).
2) In a nearby fire department, the average firefighter/EMT's salary at entry level is $50747.00 per year, and the salary for firefighter/EMT with 1-2 years of experience is about $51694.00 per year. (exh. D-11b, D-11c).

The subject employer didn't require experience and provided required training to the firefighters/EMTs. Some of the firefighters/EMTs have already had firefighting/EMT training and certifications when applying for the job. Most of them just started working for this employer in 2018 and 2019. (exh. D-3)

Mason County Fire District 16 Case ID: 1910755

**Shifts Worked / Work Hours**

Per information obtained, the firefighters/EMTs at the neighboring fire districts work on schedule of 2 days (48 hours) on, then 4 days off. (exh. B-4, B-6)

Per research conducted, average number of shifts per month worked by firefighter are as below: (exh. D-11d, D-11e)
1) on average, the firefighters work about 2920 hours per year − that's about 121.67 shifts of the 24-hour shift per year; that's about 10 to 11 shifts of the 24-hour shift per month.
2) most of the firefighters are on the schedule of "working 1 24-hour shift, resting 48 hours, then working 1 24-hour, resting 48 hours,… and so on", regardless of the weekends or holidays. It's estimated that, based on this schedule, they would work about 10-11 shifts of the 24-hour shift per month.


Pays Comparison #1:
Compare the pays of the volunteer firefighters/EMTs of this subject employer, who were paid $4.17 per hour when working as volunteers, with the pays of $15 per hour (in 2018) & 20 per hour (in 2019 & 2020) when working as career employees for this same employer.

(b)(7)(E) = 27.80%
= 20.85%

Pays Comparison #2:

Compare the pays of the volunteer firefighters/EMTs of this subject employer, who were paid $4.17 per hour when working as volunteers, with the pays of the neighboring Fire District career firefighters/EMTs ($16-$18 per hour). (exh. B-1, B-2, B-6)

(b)(7)(E) = 26%
= 23.2%

Pays Comparison #3:
Compare the pays of the volunteer firefighters/EMTs of this subject employer, who were paid $100 for a 24-hour shift when working as volunteers, with the pays of Mason County's job posting for qualified/certified firefighters/EMTs ($5379 monthly salary, work approximately 11 shifts of 24-hours shift per month) (exh. D-11)

(b)(7)(E) = $489 per 24-hour shift

(b)(7)(E) = 20.45%

Mason County Fire District 16 Case ID: 1910755

<u>Pays Comparison #4:</u>
Compare the pays of the volunteer firefighters/EMTs of this subject employer, who were paid $100 for a 24-hour shift when working as volunteers, with the average career firefighter's $50747.00 - $51694.00 annual salary, in a nearby fire department.  (exh. D-11b, D-11c).

Most firefighters work average 2920 hours per year = 121.67 shifts of 24-hour shift per year



= $417.09 per 24-hour shift
= $424.87 per 24-hour shift

= 23.98%
= 23.54%

Per analysis above, It's determined that the volunteer firefighters had received the stipends that exceed 20% of the wage of what the employer would otherwise pay to hire a full-time career employee to perform comparable services, therefore, their stipends are deemed not to be qualified as nominal fee.

1.  Economic reality consideration & total hours worked

    Some of the volunteer firefighters/EMTs had worked between 36 hours to 100 hours per week consistently and regularly. It's unlikely that 36 to 100 hours of work per week is "volunteering", rather than employment. Also, the payment of the "volunteer service" is the reason for some firefighters/EMTs to volunteer because they need that income. For some volunteer firefighters/EMTs, this volunteer payment is their main source of income and they depend on this for living. This didn't reflect the real spirit of volunteerism of these volunteers. (exh. B-1 to B-8, D-7)

2.  Employer had paid all volunteers as employees and had deducted the standard payrolls taxes, such as Medicare and Social Security taxes, from those misclassified volunteers when processing the payrolls. (exh. D- to D-10)

3.  This employer relies entirely on the volunteer firefighters/EMTs to work all shifts (24/7) at the fire stations. If there were no volunteers, the employer would have to hire the career firefighters/EMTs. The employer has stated that they only used volunteers because of the lack of funding and couldn't afford to hire employees. The volunteers were basically the replacement of the regular employees.

Mason County Fire District 16 Case ID: 1910755

Section 6:

There were violations.

The employer had paid the misclassified volunteer firefighters for $100 for a "Reserved" 24-hour shift, $50 for a "Stipend" 12-hour shift, and $25 for a "Resident" 12-hour shift. The regular rates for some hours worked were less than $7.25 per hour, and that was below the required Federal minimum wage (Fed. MW) of $7.25 per hour.

**Computations:**
The minimum wage (MW) due for each week was computed by multiplying the total number of the hours worked in a week by the min. wage deficit (the difference between the Fed. MW $7.25 and the hourly rate that the employer paid) to get the MW wage due for that week.

For example:

| Total hw | reg. rate | mw required | mw deficit | mw due |
|---|---|---|---|---|
| 48.00 | $4.17 | $7.25 | $3.08 | $147.84 |

Total minimum wage due is $10,141.23  (exh. Λ, Λ-2 to Λ-12)

Resident Shift:
Per employer, the "Resident" shift is for the firefighters who live in employer's property and they're not charged any rent, and that part of their stipend was free rent and utilities. (exh. D-4)

Per WHI's research and analysis, the cost of the facilities and utilities is $50 per day / $25 per ½ day, therefore, the actual payment for the Resident 12-hour shift was reconstructed as $25 stipend paid in cash + cost of facilities $25= $50 per shift. (exh. D-5)

Section 7:

There were violations.

The employer had failed to pay overtime hours at T1/2 of regular rate.

**Computation:**

Overtime rate / Regular rate:
The firefighters (FFs)/EMTs hourly rate is the regular rate since they're paid hourly rate when worked as career FFs/EMTs. Their hourly rates are higher than the WA State minimum wage.

Mason County Fire District 16 Case ID: 1910755

The "reimbursement" that firefighters received was for incidental expenses, therefore, it's not included in the regular rate calculation.

The overtime computation for the work periods that have minimum wage violation is: 1) The straight time due = total hours worked x (hourly rate of $15 or $20 - $7.25), plus 2) the half-time of overtime premium for the overtime hours, that's (total hours worked − 53 hours) x regular rate x 0.5.

For example:

| total hw | Reg rate | rate deficit | ST due | OT hrs | 0.5 OT rate | 0.5 OT due | total OT due |
|----------|----------|--------------|--------|--------|-------------|------------|--------------|
| 60.00 | $20.00 | $12.75 | $765.00 | 7 | $10.00 | $70.00 | $835.00 |

The overtime computation for the weeks that didn't have minimum wage violation is to multiply the overtime hours by the 0.5 of the regular rate.

Total overtime due is $40,253.75 (exh. Λ, Λ-2 to Λ-12)

Section 11:

There were violations.

The time and pay records were incomplete. The payroll records didn't reflect the overtime pays accurately.

Section 12:

There was no violation.
No minors were employed. (exh. B-1 to B-8)

**Disposition:**

A preliminary conference was held on Aug 13, 2020 via phone with the Fire Chief, Mr. Matthew Welander. The regulations of the FLSA were reviewed, with emphasis given to volunteer and hours worked.

Mason County Fire District 16 Case ID: 1910755

The regulations with the volunteers of the public agency were discussed in detailed. Mr. Welander was advised that the volunteer firefighters/EMTs were misclassified, and they're the employees, not volunteers. WHI explained the reasons why those firefighters/EMTs were considered to be employees. Mr. Welander explained that it's the common practice in Mason County, that all fire districts used volunteer firefighters/EMTs. Mr. Welander explained that the reason he used volunteer firefighters/EMTs was due to the lack of funding.

Mr. Welander was advised that since the employees were paid only $100 for each 24-hours shift and were not paid overtime hours worked at T1/2, there would be minimum wage and overtime violations. Mr. Welander was advised that per FLSA, all hours worked had to be recorded and paid at least Federal minimum wage of $7.25 per hour, and the overtime hour worked needed to be paid at T1/2 of regular rate.

Mr. Weland stated he intended to come into compliance, but he would discuss the issues internally with the commissioners.

WHI has followed up with the Fire Chief on Aug20, 2020 regarding his discussion with the commissioners, and received response from Fire Chief stating he's out of the office due to emergency wildfire fighting and wouldn't be back till Sep.

Aug27, 2020, an attorney, Mr. Eric Quinn, contacted the office, stating he's now representing the subject firm. WHI contacted attorney and the attorney stated he would respond after gathering all necessary information and consulting with the employer.

Sep24, 2020, a conference was held via phone with the attorney to discuss the regulations and findings. The definition of the volunteer was discussed in details. The attorney was advised that the employees of the public agency couldn't volunteer for the same public agency, for the same type of services. The attorney stated that those firefighters/EMTs could volunteer for the West Mason Fire (MCFD16) since West Mason Fire (MCFD16) was not the "Employer" of the firefighters/EMTs.

The attorney later stated that he understood that the West Mason Fire (MCFD16) was the "Employer" of the volunteer firefighters/EMTs when they worked at the fire stations, but he didn't think that the West Mason Fire (MCFD16) was the "Employer" when firefighters/EMTs worked at the wildfire locations. The attorney explained that West Mason Fire (MCFD16) had a contract with the WA government and received the WA government funding to pay for the wildfire fighting work, therefore, the WA government would be the "Employer" of the firefighters/EMTs when they fought the wildfire. (exh. D-6)

Attorney also stated that West Mason Fire (MCFD16) was not the "Employer" when those firefighters/EMTs worked at the race track because West Mason Fire (MCFD16) had the contract with the race track owner to provide service during the racing events and the firefighters/EMTs were paid with the money from that contract, and the race track owner supervised those firefighters/EMTs when they worked there.

Mason County Fire District 16 Case ID: 1910755

The attorney was advised that West Mason Fire (MCFD16) was the employer of those firefighters/EMTs since those firefighters/EMTs applied the job with West Mason Fire (MCFD16), had interviewed with the West Mason Fire (MCFD16) officer (Fire Chief), were offered a job, were offered the shifts to work, were allowed to work those shifts (permit & suffer to work), their hours worked records were kept by West Mason Fire (MCFD16), and were paid by the West Mason Fire (MCFD16) as employees.

The attorney was advised that the funding from the WA government and the money from the contract with the race track was the sources of revenue for MCFD16, and that it wouldn't make the WA government and the race track owner became the employer of those firefighters/EMTs, and it would not disqualify the West Mason Fire (MCFD16) as an employer.

The pay issue was discussed. The attorney stated that the pays was not based on the productivity because they always received the same amount, $100 for a 24-hours shift, doesn't matter how many shifts they worked, and there's no seniority pays. The attorney was advised that the total pays was based on the number of shifts they worked, for example, if they worked 5 shifts in a month, they received $500 and if they worked 10 shifts, they received $1000, therefore, the pays was based on the number of shift they worked and that's based on the productivity. The attorney was advised that in order to be considered that the payment was not based on productivity, the volunteers should be paid the same amount of money, for example $500 a month for each & every month, regardless how many shifts they worked in a month, either 1 shift or 10 shifts.

As to the nominal pay issue, the attorney stated that the volunteer's pays was not more than 20% of the career firefighters of Thurston County, therefore it's nominal pays. The attorney was advised that after comparing the pays of the volunteer firefighters/EMTs with its own career firefighters/EMTs, and with other fire departments, it appeared the stipends the volunteer firefighters/EMTs received was more than 20%, therefore, it's not nominal pays. (exh. D-6)

The attorney was advised that 1) the misclassified volunteers' pays should be compared to the compensation that the employer would have paid to employ a full-time firefighter for performing comparable services, and that the payroll records has shown that the employer had paid them between $15 and $20 per hour when they worked as the employees, 2)the misclassified volunteers' pays should be compared to the firefighters/EMTs with the same experience and same number of years of service; and that most of the misclassified volunteers didn't have any experience, and they had just started working for the West Mason Fire (MCFD16), and that they're entry level (step1) firefighters/EMTs, therefore, their pays shouldn't be compared to those experienced career firefighters', who had worked many years and received the highest earning,  3) the pays of the misclassified firefighters/EMTs had also been compared with the pays of the career firefighters/EMTs of other fire districts that are within the Mason County, and that it indicated that the compensation the misclassified volunteers received was not nominal pays.

Mason County Fire District 16 Case ID: 1910755

Jan26, 2021, final conference with attorney. Attorney requested that the findings and violations explanations be put in writing.  Attorney stated intended to be in compliance in the future, but didn't agree to the findings, and didn't agreed to the back wage due.

WHI discussed attorney's request and findings with ADD, and have had numerous meetings with RO & SOL to discuss the issues. The back wage computations were modified per RO/SOL instructions.

(b)(6); (b)(7)(C) was notified the investigation result on Feb24, 2021.

The employers have been advised of the possibility of the liquidated damage and the CMP.

Publication provided: 553, FS 44, HRG, FS 77a, MW Poster.


**Recommendation:**

(b)(7)(E)


Send correspondence to:

Eric Quinn
Attorney at Law
Quinn and Quinn, P.S.
7403 Lakewood Drive West, suite #11
Lakewood, WA 98499
253-590-6628
ericquinn@firehouselawyer2.com


(b)(6); (b)(7)(C)
WHI
US DOL / WHD