Hon. David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| LUIS APONTE and JENNIFER SELF,<br><br>Plaintiffs,<br><br>vs.<br><br>MASON COUNTY FIRE PROTECTION DISTRICT NO. 16 a/k/a WEST MASON FIRE,<br><br>Defendant. | No. 3:21-cv-5459-DGE<br><br>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>**NOTE ON MOTION CALENDAR:**<br>**October 21, 2022  Date of consideration** |

## I.  INTRODUCTION

Defendant Mason County Fire Protection District No. 16 ("Defendant"), by and through its counsel of record, Steven G. Wraith, Erik R. Connell, and Carinne E. Bannan of Lee Smart, P.S., Inc., hereby moves this Court for summary judgment pursuant to F.R.C.P. 56. Defendant seeks a ruling that the plaintiffs are not employees under the Fair Labor Standards Act ("FLSA") and therefore not entitled to minimum wage and overtime pay. The Court should then deny Plaintiff's request to exercise supplemental jurisdiction over the remaining state-law wage claims. If it chooses to exercise jurisdiction, it should find that Plaintiffs are not employees under state law either, and thus all of Plaintiffs' state law claims must be dismissed.

/ / /

/ / /

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 1
6980242.doc



## II.  STATEMENT OF FACTS

This is an employment case.  Plaintiffs were volunteer firefighters with defendant Mason County Fire Protection District No. 16.  Declaration of Matthew Welander (hereinafter "Welander Decl.") ¶ 3.  Plaintiff Aponte was a volunteer firefighter from approximately July 2018 until January 17, 2020.  *Id.*  Plaintiff Self was a volunteer firefighter from approximately August 2019 until February 12, 2020.  *Id.*  Plaintiffs filed a complaint alleging (1) violations of the Fair Labor Standards Act (FLSA) regarding minimum wage, (2) violations of the FLSA regarding overtime pay, (3) violations of Washington state wage laws RCW 49.52, 49.46, 49.48, WAC 296-128-550, (4) unjust enrichment, and (5) wrongful discharge in violation of public policy.

Regarding the FLSA and state wage law violations, Plaintiffs allege that they are not volunteers but actually employees who are entitled to minimum wage and overtime pay under the FLSA and state law.  Defendant disputes this.  In the alternative, Plaintiffs argue unjust enrichment as a basis for compensation.  Lastly, Plaintiffs claim that their terminations violated public policy.

### A.     COMPENSATION SCHEME

From 2018 to 2020, Defendant employed only two employees: the Fire Chief and District Secretary.  *Id.* at ¶ 4.  All firefighters/EMTs were classified as volunteers, as is standard practice throughout the state of Washington.  *Id.* at ¶ 5.  Firefighters were provided with a nominal stipend based on the number of shifts they work.  *Id.* at ¶ 6.  Volunteers were paid $50 per 12-hour shift and $100 per 24-hour shift with the District.  *Id.*  Volunteers were not assigned shifts; they signed up for shifts on their own.  *Id.*  Volunteers were require to reside or sleep at the fire station during shifts subject to call, while they were not engaged in the performance of their active duties.  *Id.*  Chief Matthew Welander told both Luis Aponte and

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 2
6980242.doc

Jennifer Self this when they started volunteering for Defendant. *Id.* Both agreed to these terms. *Id.*

In addition, the District contracts with a local, private racetrack to provide on-call services. *Id.* at ¶ 7. The racetrack provides all compensation and supervision for the firefighters while at the track. *Id.* Volunteers received compensation of $15 per hour in 2018 and $20 per hour in 2019 for these on-call services. *Id.* While firefighters are at the track, they cannot leave their shift to perform District duties or respond to emergencies. *Id.* The track pays the firefighters per hour and provides that compensation to the District, which passes it on to the firefighters. *Id.* Jennifer Self never took any shifts at the racetrack. *Id.* at ¶ 8.

Volunteer firefighters received no benefits from Defendant typically associated with employment, such as overtime pay, bonuses, vacation time, sick leave, disability insurance, medical benefits, or retirement benefits. *Id.* at ¶ 9.

### III.  STATEMENT OF ISSUES

**A.** Whether Plaintiffs were employees under the FLSA when Plaintiffs were volunteers for a public agency and received a nominal fee.

**B.** Whether the Court should decline supplemental jurisdiction over the state law claims and dismiss them.

**C.** Whether the Court should dismiss the claim for wrongful discharge where the claims from which original jurisdiction derive are based on wholly distinct facts and where there is no common nucleus of fact to justify the exercise of supplemental jurisdiction.

**D.** Whether Plaintiffs fall under exceptions to state law minimum wage and overtime laws.

**E.** Whether Plaintiffs' unjust enrichment claims must be dismissed when Plaintiffs were volunteers.

**F.** Whether Plaintiffs' wrongful discharge in violation of public policy claims must be dismissed when Plaintiffs were not employees of Defendant.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3
6980242.doc

LEE SMART
701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

## IV.  EVIDENCE RELIED UPON

Defendant relies on the declaration of Matthew Welander, and the pleadings on file with the Court.

## V.  AUTHORITY

### A. SUMMARY JUDGMENT STANDARD

> Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To survive a motion for summary judgment, the adverse party must present "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id*. at 255, 257, 106 S.Ct. 2505. When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*Glob. Enterprises, LLC v. Montgomery Purdue Blankenship & Austin PLLC*, 52 F. Supp. 3d 1162, 1167–68 (W.D. Wash. 2014), *aff'd sub nom. Glob. Enterprises, LLC v. Montgomery Purdue Blankinship & Austin PLLC*, 2017 WL 2323369 (9th Cir. May 26, 2017).

### B. FLSA VIOLATIONS - Plaintiffs Are Not Employees Under the Fair Labor Standards Act.

Plaintiffs allege they are employees, not volunteers, under the Fair Labor Standards Act ("FLSA"), 29 USC §201 et seq.  Because they claim they are employees, they allege the District violated the minimum wage and overtime pay requirements under the Act.  The question of whether or not a party is an eligible employee under the Act is a question of law. *Mendel v. City of Gibraltar*, 727 F.3d 565, 568 (6th Cir. 2013).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4
6980242.doc

LEE SMART
701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

Plaintiffs are volunteers, and thus the FLSA does not apply. Plaintiffs are volunteers both under the economic realities test, and also under the FLSA exception for volunteers of a public agency. Defendant will discuss each in turn below.

### 1. Plaintiffs Are Not Employees Under the Economic Realties Test.

The FLSA broadly defines an employee as any individual employed by an employer. 29 USC §203(e)(1). "Employ" means to "suffer or permit to work." *Id.* at §203(g). The FLSA also provides that the term "employee" does not include any individual who volunteers for a public agency if the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee, and the services are not the same type of services which the individual is employed to perform for such public agency. *Id.* at §203(e)(4)(A).

To determine whether an individual is an employee under the FLSA, courts have adopted an "economic reality" test. In applying the economic reality test, courts generally look at (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business. *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440–41 (10th Cir. 1998). None of the factors alone is dispositive; instead, the court must employ a totality of the circumstances approach. *Id.*

Those seeking compensation under the FLSA bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act. *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999). Once this burden is met, the employer bears the burden of proving entitlement to any exemptions or exceptions to the FLSA's compensation requirements. *Id.*

Here, the plaintiffs are volunteers, not employees, under the test. The District maintains limited control over the firefighters. They control aspects of the work, but have little to no

control over the scheduling. Volunteers do not have set shifts or work days; they sign up for or request certain shifts. They can work as many or as few as they want.

There is also no opportunity for worker profit or loss. The volunteer is compensated for the shifts worked, but that is all. There are no bonuses or overtime opportunities. While the volunteers can elect to take additional shifts at the racetrack, this is essentially side-work as it is controlled and paid by the racetrack, not the District. Additionally, the workers have no investment in the business, i.e. the District, as it is not a business, but a governmental entity. In terms of the permanence of the working relationship, none of the volunteers have contracts that guarantee work for a set period of time. Both Plaintiffs in this case had been volunteering with the District for fewer than three years. There was no permanence of their working relationships with the District and Plaintiffs were free to refuse shifts or accept employment elsewhere at any time.

Regarding the degree of skill required element, there are certain requirements to being a firefighter, whether volunteer or employee, but courts have found that this does not automatically render all firefighters employees. Certain skills, qualifications, training, and certifications are required of all firefighter volunteers and employees in this case. However, this is common throughout this field; it is well-known that firefighters and EMTs require specific training. "[T]he fact that a "volunteer" firefighter, like a part-time paid firefighter, must maintain various certifications, does not illuminate any distinction in status between the volunteer and the employee." *Krause v. Cherry Hill Fire Dist. 13*, 969 F. Supp. 270, 275 (D.N.J. 1997). While the work performed is an integral part of the employer's "business," this is not a normal business. The District is a branch of government, a non-profit.

Ultimately, the economic realities shows that Plaintiffs are volunteers, not employees. This is not a situation wherein a business is seeking to exploit individuals for profit by classifying them as "volunteers." *See Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

(4th Cir. 1999) (courts have looked at whether the worker has displaced a bona fide applicant who desired to sell his services at prevailing rates, or to be an exploited unorganized laborer, evils which the Act was designed to prevent). This is a common practice utilized by public fire districts. In addition, when the Court looks at the exception to the FLSA and the nominal fees paid, it is clear that Plaintiffs are volunteers, not employees.

### 2. Plaintiffs Fall Within the FLSA Volunteer Exception.

Here, Plaintiffs fall under the exception of the FLSA for volunteers of a public agency. The exception provides that the term "employee" does not include any individual who volunteers for a public agency if the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee, and the services are not the same type of services which the individual is employed to perform for such public agency. 29 USC §203(e)(4)(A). Here, the District is a public agency. Plaintiffs volunteered and received a nominal fee in exchange for the services provided. Further, they are not already employed by the District to perform the same work as the work they perform as volunteers.

Courts have found that the issue of compensation is significant. If volunteers are only paid a nominal fee, they are more likely to be considered volunteers under the exception. However, if firefighters are paid more substantial compensation or an hourly wage, then they are more likely to be considered employees. "Volunteers may be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers." 29 C.F.R. § 553.106(a). The specific provision addressing nominal fees provides, in part, "A nominal fee is not a substitute for compensation and must not be tied to productivity. However, this does not preclude the payment of a nominal amount on a 'per call' or similar basis to volunteer firefighters." 29 C.F.R. § 553.106(e). Finally, the regulations caution: "Whether the furnishing of expenses, benefits, or fees would result in individuals' losing their status as volunteers under the FLSA can only be determined by examining the total

amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation." 29 C.F.R. § 553.106(f).

Other courts have addressed the compensation issue. In *Mendel v. City of Gibraltar*, the court was faced with the issue of whether the wages paid to firefighters were "compensation" or merely a "nominal fees." *Mendel v. City of Gibraltar*, 727 F.3d 565, 570 (6th Cir. 2013). The court found, "If the hourly wages are compensation, then the firefighters are employees under the FLSA. Conversely, if the wages are merely a nominal fee, then the firefighters are volunteers expressly excluded from the FLSA's definition of employee." *Id.* However, in that case, the firefighters were paid by the hour ($15 per hour), not on a per-call basis. The court found that was substantial compensation and therefore the firefighters were employees. The present case is distinguishable because here, the volunteers are paid purely on a per-shift basis, not an hourly basis.

In this case, Plaintiffs are paid a set stipend per shift that they volunteer to take. This stipend has nothing to do with the number of calls they respond to or how productive they are. 29 C.F.R. § 553.106(e). This is not an hourly wage or anything that amounts to close to minimum wage. *Mendel*, 727 F.3d at 570. Plaintiffs in this case were paid a nominal fee that would amount to $4.17 per hour. 29 USC §203(e)(4)(A); 29 C.F.R. § 553.106(a). The FLSA exception for volunteers of a public agency clearly applies.

C. **This Court Should Decline Supplemental Jurisdiction Over the State Law Claims and Dismiss Them.**

If the Court grants the motion for summary judgment as to the FLSA claims and finds that Plaintiffs are not employees under the FLSA, then the Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them.

28 U.S.C. § 1367(c) authorizes a court to decline to exercise supplemental jurisdiction in four circumstances: (1) the claim raises a novel or complex issue of state law; (2) the claim

substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) **the district court has dismissed all claims over which it has original jurisdiction;** or (4) in other exceptional circumstances.  The court's exercise of discretion is further informed by "judicial economy, convenience, fairness, and comity." *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (emphasis added). The Supreme Court has stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001, supplemented, 121 F.3d 714 (9th Cir. 1997), as amended (Oct. 1, 1997) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, (1988)).

In this case, should the Court dismiss Plaintiffs claims under the FLSA, all federal-law claims will have been eliminated before trial, leaving only the state law claims – failure to pay minimum wage, failure to pay overtime wages, willful refusal to pay, failure to pay wages owed by termination, unjust enrichment, and wrongful discharge in violation of public policy. The Court should decline to extend jurisdiction over these claims, as the Court will have dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c).

### D.   If the Court Does Not Dismiss the FLSA Claims, It Should Still Dismiss the State Law Wrongful Discharge Claim for Lack of Jurisdiction.

The Court should dismiss the wrongful discharge claim for lack of subject matter jurisdiction.  Defendant acknowledges that the Court has original subject matter jurisdiction over the claims for violations of the FLSA pursuant to federal question jurisdiction.  There is no diversity jurisdiction in this case as both Plaintiffs and Defendant reside in Washington. Diversity jurisdiction has neither been alleged nor plead.

The court does not have subject matter jurisdiction over the breach of contract or wrongful discharge claims, as those are state-law claims (hereinafter the "state-law claims").  It

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9
6980242.doc

LEE SMART
701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

also lacks supplemental jurisdiction because the state-law claims and the FLSA claims do not arise out of the same nucleus of operative fact. The court should dismiss the state-law claims for lack of jurisdiction.

Under Fed. R. Civ. P. 12(b)(1), a party may move to dismiss a claim, and make either a facial or factual challenge to the existence of subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." State law claims "form part of the same case or controversy" as a federal claim "when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855–56 (9th Cir. 2004). When a narrow statute such as the FLSA is the only source of federal jurisdiction, the exercise supplemental jurisdiction is proper only if the federal and state claims "are merely alternative theories of recovery based on the same acts." *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir. 1995) (quoting *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 479 (3d Cir.1979)); *Krause v. Cherry Hill Fire Dist. 13*, 969 F. Supp. 270, 281 (D.N.J. 1997).

Here, the wrongful discharge claim arises from facts entirely different from those upon which the FLSA claims are based. The fact that both can be considered "employment law" claims is not sufficient. Courts have repeatedly found that wage claims do not arise out of the same nucleus of operative facts as other employment related claims, such as wrongful discharge.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10
6980242.doc

LEE SMART
701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

In *Lyon v. Whisman*, the Third Circuit held that a plaintiff's claim for overtime wages under the FLSA shared no common nucleus of operative facts with her state law claims for breach of contract and tort based on her employer's alleged failure to pay a promised bonus on time. *Lyon v. Whisman*, 45 F.3d 758, 764 (3d Cir. 1995). The Third Circuit pointed out that the proper analysis of the "common nucleus" requirement of *United Mine Workers*, requires an intensely fact-specific inquiry. *Id.* at 760. Moreover, the Lyon court declared, that, in a federal court action in which jurisdiction is based upon the FLSA, the fact that both state and federal claims arise out of the "employment relationship," without more, provides an insufficient factual nexus to confer supplemental jurisdiction. *Id.* at 762.

The district court in *Krause v. Cherry Hill Fire Dist. 13* considered an almost identical issue and found the FLSA claims were separate from the state-law claims, and therefore found no supplemental jurisdiction existed. *Krause v. Cherry Hill Fire Dist. 13*, 969 F. Supp. 270, 281 (D.N.J. 1997). There, the plaintiffs, firefighters, alleged violations of the minimum wage provisions of the FLSA, violations of certain New Jersey statutes governing public employment, and common law breach of contract. The court held that the FLSA claims "require[] no more than proof of an employment relationship, which is disputed, and proof of the wages paid and time periods involved, which is apparently undisputed. By contrast, plaintiffs' New Jersey statutory claims, as well as their breach of contract claim, require much more." *Id.* The court held that the state statutory claim shared no more than the fact of the employment relationship with plaintiffs' FLSA claim and that plaintiffs must prove distinct facts in order to prevail, and they seek much different relief. *Id.* at 282. Likewise, it held that the breach of contract claim required proof of elements and facts that shared no common factual basis with the FLSA claim. *Id.* at 283. Ultimately, the court held that no supplemental jurisdiction existed as each of plaintiffs' state law claims involved critical facts in addition to proof of an employment relationship within the meaning of the FLSA. *Id.*

In this case, no supplemental jurisdiction exists over the wrongful discharge claim. The FLSA claims pertain solely to wages and the status of the employment relationship, i.e. whether Plaintiffs were volunteers or employees under the FLSA. In contrast, the wrongful discharge claim requires proof of complaints made about safety/discrimination, facts involving Plaintiffs' termination and reasons therefore, and issues involving safety, harassment, and dishonesty. This has absolutely nothing to do with wages or any claims for unpaid wages. There are no common facts between these two sets of claims beyond proof of an employment/working relationship, which is insufficient to meet the "common nucleus of operative facts" standard. *Kuba*, 387 F.3d at 855–56. As there is an insufficient factual nexus to confer supplemental jurisdiction, the court should dismiss the wrongful discharge claim.

**E.   If the Court Retains Supplemental Jurisdiction over the State Wage Claims, It Should Find That Plaintiffs Are Not Employees Under State Law Either.**

Even if the Court retains supplemental jurisdiction over Plaintiffs' state wage claims, Plaintiffs are not employees under state law either. Plaintiffs claim they are entitled to both minimum wage and overtime pay under state law as employees. Yet Plaintiffs clearly fall under exceptions to both laws as volunteers.

First, Plaintiffs seek minimum wage for hours worked under RCW 49.46. Yet Plaintiffs clearly fall under two exceptions to the minimum wage law under RCW 49.46.010(3).

First, Plaintiffs fall under the exception contained in RCW 49.46.010(3)(d):

> Any individual engaged in the activities of an educational, charitable, religious, state or local governmental body or agency, or nonprofit organization where the employer-employee relationship does not in fact exist or where the services are rendered to such organizations gratuitously. If the individual receives reimbursement in lieu of compensation for normally incurred out-of-pocket expenses or receives a nominal amount of compensation per unit of voluntary service rendered, an employer-employee relationship is deemed not to exist for the purpose of this

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 12
6980242.doc

LEE SMART
701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

> section or for purposes of membership or qualification in any state, local government, or publicly supported retirement system other than that provided under chapter 41.24 RCW;

In this case, Plaintiffs worked for a local governmental body or agency. *Id.* Plaintiffs received a nominal amount of compensation per unit of voluntary service rendered; in this case volunteers were paid $50 per 12-hour shift and $100 per 24-hour shift with the District. *Id.* Thus, an employee-employer relationship is deemed not to exist for purpose of RCW 49.46. *Id.*

Second, Plaintiffs also fall under the exception contained in RCW 49.46.010(3)(j):

> Any individual whose duties require that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties;

In this case, Plaintiffs' duties required that they reside or sleep at the fire station while subject to call, not engaged in the performance of active duties. *Id.* Thus, Plaintiffs were volunteers, not employees.

Also, of note is RCW 49.46.065, which states:

> When an individual volunteers his or her labor to a state or local governmental body or agency and receives pursuant to a statute or policy or an ordinance or resolution adopted by or applicable to the state or local governmental body or agency reimbursement in lieu of compensation at a nominal rate for normally incurred expenses or receives a nominal amount of compensation per unit of voluntary service rendered such reimbursement or compensation shall not be deemed a salary for the rendering of services or for purposes of granting, affecting or adding to any qualification, entitlement or benefit rights under any state, local government or publicly supported retirement system other than that provided under chapter 41.24 RCW.

In this case, Plaintiffs volunteered their labor for a local governmental body or agency and received a nominal amount of compensation per unit of voluntary service rendered, under policy of the local governmental agency or body. *Id.* In this case volunteers were paid $50 per

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13
6980242.doc

LEE SMART
701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

12-hour shift and $100 per 24-hour shift with the District. Thus, under RCW 49.46.065, Plaintiffs' nominal compensation is not deemed a salary. *Id.*

Case law supports the notion that volunteer firefighters are volunteers, not employees. In *Doty v. Town of South Prairie*, 155 Wn.2d 527, 547, 120 P.3d 527 (2005), the Supreme Court of Washington held that a volunteer firefighter did not qualify as an employee or worker under the Industrial Insurance Act. In reaching this holding, the court analyzed whether the nominal compensation received by the volunteer firefighter plaintiff constituted wages, opining:

> In light of our Minimum Wage Act, chapter 49.46 RCW, it is highly unlikely that our legislature would consider the stipend the Town paid Doty as constituting remuneration for the fire fighting services she performed. Doty received the same small stipend amount regardless of the duration of the call and the extent of the services performed. This is not remuneration for her services, but more reasonably, maintenance and reimbursement for expenses incurred in performing her assigned duties, such as reimbursement for travel and food expenses a volunteer inevitably incurs in responding to calls.

*Id.* at 542.

The analysis for Plaintiffs' claims for overtime wages is similar. Under RCW 49.46.130(2)(a): "(2) This section does not apply to: (a) Any person exempted pursuant to RCW 49.46.010(3)."

Thus, the analysis is the same as above. As discussed above, Plaintiffs fall under two exceptions contained in RCW 49.46.010(3), and thus are not eligible for overtime under RCW 49.46.

Furthermore, Plaintiffs were not employed for longer than forty hours, as that was never a requirement. Under RCW 49.46.130(1):

> Except as otherwise provided in this section, no employer shall employ any of his or her employees for a workweek longer than forty hours unless such employee receives compensation for his or her employment in excess of the hours above specified at a rate not



    less than one and one-half times the regular rate at which he or she
    is employed.

In this case, Plaintiffs were never employed for a workweek longer than forty hours. *Id.* Plaintiffs were free to sign up for the number of hours they chose. If Plaintiffs chose to work more than forty hours in any given week, it was entirely Plaintiffs' choice.

    **F.**   **Plaintiffs' Unjust Enrichment Claims Must Be Dismissed.**

Plaintiffs' unjust enrichment claims must be dismissed because both were volunteers and unjust enrichment does not apply to volunteers.

A claim for unjust enrichment requires proof of three elements: (1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment. *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 490, 254 P.3d 835 (2011). The mere fact that a defendant has received a benefit from the plaintiff is insufficient alone to justify recovery. *Id.* The doctrine of unjust enrichment only applies if the circumstances of the benefits received or retained make it unjust for the defendant to keep the benefit without paying. *Id.* The enrichment of the defendant must be unjust; the plaintiff cannot be a mere volunteer. *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).

In this case, Plaintiffs cannot recover for unjust enrichment, as they cannot present any evidence of the third prong, that the circumstances were unjust. Plaintiffs were volunteers, so this element does not apply to the present case. *Id.*

Furthermore, Plaintiffs had a volunteer contract with Mason County Fire Protection District No. 16. "Unjust enrichment is a basis for recovering the value of a benefit conferred on another party in the absence of a contractual relationship." *Bircumshaw v. State*, 194 Wn. App. 176, 205, 380 P.3d 524 (2016). Where a party's relationship with another party is governed by contract, unjust enrichment is not an appropriate theory of liability. *Id.* at 205-06.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 15
6980242.doc

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

In this case, Mason County Fire Protection District No. 16 told Plaintiffs that they would receive $50 per 12-hour shift and $100 per 24-hour shift with the District.  Plaintiffs volunteered after receiving this information, accepting the volunteer contract.  As there was a contractual relationship between Plaintiffs and the District, unjust enrichment is not an appropriate theory of liability.  *Id.* at 205-06.

### G. Plaintiffs' Wrongful Discharge in Violation of Public Policy Claims Must Be Dismissed.

Plaintiffs' wrongful discharge in violation of public policy claims must be dismissed because this remedy is not available to non-employees.

Termination in violation of public policy is a *narrow* exception to the at-will doctrine. *Becker v. Community Health Systems, Inc.*, 184 Wn.2d 252, 258-59, 359 P.3d 746 (2015).  To state a cause of action, a plaintiff employee must both plead and prove that her termination was motivated by reasons that contravene an important mandate of public policy.  *Id.*  The plaintiff must establish that the public policy is clearly legislatively or judicially recognized.  *Id.* Wrongful discharge claims have generally been limited to four scenarios:

> (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.

*Id.* at 258-59.

When a plaintiff's case does not fit neatly within one of these scenarios, a more refined analysis may be necessary, and the four-factor *Perritt* analysis may provide helpful guidance. *Id.* at 259.  Under the *Perritt* framework, courts examine:

> (1) the existence of a "clear public policy" (clarity element), (2) whether "discouraging the conduct in which [the employee]

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 16
6980242.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

>
> engaged would jeopardize the public policy" (jeopardy element), (3) whether the "public-policy-linked conduct caused the dismissal" (causation element), and (4) whether the employer is "able to offer an overriding justification for the dismissal" (absence of justification element).

*Rose v. Anderson Hay and Grain Co.*, 184 Wn.2d 268, 277, 358 P.3d 1139 (2015). To establish the jeopardy element, a plaintiff must show that she engaged in particular conduct and the conduct either directly relates to the public policy or was necessary for the effective enforcement of the public policy. *Id.* This burden requires the plaintiff to argue that other means for promoting the policy are inadequate. *Id.* at 277-78. In other words, the plaintiff must argue that the actions she took were the only adequate means to promote the public policy. *Id.* at 278. Whether a particular statue contains a clear mandate of public policy is a question of law. *Hubbard v. Spokane County*, 146 Wn.2d 699, 708, 50 P.3d 602 (2002), overruled on other grounds by *Rose*, 184 Wn.2d at 278-86.

Generally, an employment contract, indefinite as to duration, is terminable at will by either the employee or employer. *Duncan v. Alaska USA Fed. Credit Union, Inc.*, 148 Wn. App. 52, 60, 199 P.3d 991 (2008) (quoting *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 229, 685 P.2d 1081 (1984)). However, there are two ways in which "employers may be obligated to act in accordance with policies as announced in handbooks issued to their employees." *Id.* First, the employee and employer could contractually obligate themselves concerning provisions found in an employee handbook. *Id.* Second, even absent a contractual agreement, if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship. *Id.* Mere "general statements of company policy" that do not "amount to promises of specific treatment" are not binding. *Id.* at 62.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17
6980242.doc

LEE SMART
701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

To demonstrate a breach under the specific treatment prong, a plaintiff must prove "(1) that a statement (or statements) in an employee manual or handbook or similar document amounts to a promise of specific treatment in specific situations, (2) that the employee justifiably relied on the promise, and (3) that the promise was breached." *Id.* Each of these elements presents an issue of fact. *Id.*

Claims for wrongful discharge in violation of public policy are only available to employees. "An action for wrongful discharge depends, by definition, upon termination of employment." *Awana v. Port of Seattle*, 121 Wn. App. 429, 433, 89 P.3d 291 (2004) (holding that the plaintiffs in that case could not make a claim for wrongful discharge in violation of public policy against the Port of Seattle, which contracted with their employer, as they were not employed by the Port of Seattle).

In this case, as discussed above, Plaintiffs were not employees of the District. Thus, the remedy of wrongful discharge in violation of public policy is not available to them. *Id.*

Even if Plaintiffs had ben employees of the District, there is no clear public policy involved. Plaintiffs' claims do not fit one of the four categories outlined in *Becker*. 184 Wn.2d at 258-59. With that being the case, the analysis shifts to the *Perritt* framework, where there is no clear public policy that Plaintiffs can point to. *Rose v. Anderson Hay and Grain Co.*, 184 Wn.2d at 277. Thus, Plaintiffs claims for wrongful discharge in violation of public policy must be dismissed.

## VI. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion for summary judgment.

/ / /

/ / /

/ / /

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18
6980242.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

Respectfully submitted this 28th day of September, 2022.

LEE SMART, P.S., INC.

By: *Erik Connell*
Steven G. Wraith, WSBA No. 17364
Erik R. Connell, WSBA No. 46365
Carinne E. Bannan, WSBA No. 52564
Of Attorneys for Defendant

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19
6980242.doc

