1
2
3                                                                    Hon. David G. Estudillo
4
5
6                        UNITED STATES DISTRICT COURT
7              WESTERN DISTRICT OF WASHINGTON AT TACOMA
8  LUIS APONTE and JENNIFER SELF,
9            Plaintiffs,                      No. 3:21-cv-05459-DGE
10       vs.                                  DEFENDANT'S RESPONSE TO
                                              PLAINTIFFS' MOTION FOR PARTIAL
11 MASON COUNTY FIRE PROTECTION               SUMMARY JUDGMENT
   DISTRICT NO. 16 a/k/a WEST MASON
12 FIRE,                                      *NOTE FOR MOTION CALENDAR:
                                              OCTOBER 28, 2022*
13           Defendant.
14

15                          **I.  RELIEF REQUESTED**

16       With their motion for partial summary judgment, filed while Washington fires were

17 making the air quality among the worst in the world, Plaintiffs Luis Aponte and Jennifer Self

18 attempt to destroy Washington's volunteer firefighter system in order to make a quick buck.

19 This decision should be left to the state legislature.

20       Plaintiffs were volunteers of defendant Mason County Fire Protection District No. 16

21 ("Defendant").  This is supported by the economic realities test, 29 USC §203(e)(4)(A), RCW

22 49.46.010(3)(d), and RCW 49.46.010(3)(j).

23       Defendant respectfully requests that this Court deny Plaintiffs' motion for partial

24 summary judgment.

25

DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 1
7056721.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

## II.  STATEMENT OF FACTS

Plaintiffs were volunteer firefighters with defendant Mason County Fire Protection District No. 16.  Declaration of Matthew Welander in Support of Defendant's Motion for Summary Judgment (Dkt. 44) (hereinafter "Welander Decl.") ¶ 3.  Plaintiff Aponte was a volunteer firefighter from approximately July 2018 until January 17, 2020.  *Id.*  Plaintiff Self was a volunteer firefighter from approximately August 2019 until February 12, 2020.  *Id.*

From 2018 to 2020, Defendant employed only two employees: the Fire Chief and District Secretary.  *Id.* at ¶ 4.  All firefighters/EMTs were classified as volunteers, as is standard practice throughout the state of Washington.  *Id.* at ¶ 5.  Firefighters were provided with a nominal stipend based on the number of shifts they work.  *Id.* at ¶ 6.  Volunteers were paid $50 per 12-hour shift and $100 per 24-hour shift with the District.  *Id.*  Volunteers were not assigned shifts; they signed up for shifts on their own.  *Id.*  Volunteers were require to reside or sleep at the fire station during shifts subject to call, while they were not engaged in the performance of their active duties.  *Id.*  Chief Matthew Welander told both Luis Aponte and Jennifer Self this when they started volunteering for Defendant.  *Id.*  Both agreed to these terms.  *Id.*

In addition, the District contracts with a local, private racetrack, called the Ridge, to provide on-call services.  *Id.* at ¶ 7.  The racetrack provides all compensation and supervision for the firefighters while at the track.  *Id.*  Volunteers received compensation of $15 per hour in 2018 and $20 per hour in 2019 for these on-call services.  *Id.*  While firefighters are at the track, they cannot leave their shift to perform District duties or respond to emergencies.  *Id.*  The track pays the firefighters per hour and provides that compensation to the District, which passes it on to the firefighters.  *Id.*  Jennifer Self never took any shifts at the racetrack.  *Id.* at ¶ 8.

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1    Defendant does not control the Ridge's supervision of the firefighters while they are at

2    the Ridge, or otherwise police the Ridge contract.  Declaration of Mathew Welander in Support

3    of Reply (Dkt. 58) (hereinafter "Welander Reply Decl.") ¶ 3.  The firefighters requested these

4    shifts, and the shift schedules were provided by the Ridge, not Defendant.  *Id.* at ¶ 4.

5    While Plaintiffs were signed up for volunteer shifts at Defendant, they spend their entire

6    shift being on call.  *Id.* at ¶ 5.

7    Volunteer firefighters received no benefits from Defendant typically associated with

8    employment, such as overtime pay, bonuses, vacation time, sick leave, disability insurance,

9    medical benefits, or retirement benefits.  Welander Decl. at ¶ 9.

10   Luis Aponte testified at his deposition that he slept at Defendant's "bunkhouse" when

11   he worked shifts.  Declaration of Erik Connell in Support of Reply (Dkt. 57) Ex. 1, p. 40:9-

12   41:9.  Jennifer Self also testified during her deposition that she also slept at the bunkhouse

13   during shifts.  *Id.* at Ex. 2, p. 37:16-38:11.

### III.  STATEMENT OF ISSUES

A.  Whether Defendant has waived affirmative defenses when Defendant merely uses the definition sections of the statutes that Plaintiffs brought their lawsuit under.

B.  Whether Plaintiffs were volunteers under the FLSA under both the economic realities test and the FLSA exception for volunteers of a public agency.

C.  Whether Plaintiffs fall under exceptions to state law minimum wage and overtime laws.

D.  Whether Plaintiffs Were Employees Under Either FLSA or Washington Law.

### IV.  EVIDENCE RELIED UPON

Defendant relies on the pleadings on file with the Court.

### V.  AUTHORITY

**1.     Defendants Have Not Waived Any Affirmative Defenses.**

DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - 3
7056721.doc

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

2

Exceptions to the FLSA are not affirmative defense that are listed in F.R.C.P. 8(c)(1).

Plaintiffs' cited case of *David v. Bankers Life & Cas. Co*., C14-766RSL, 2018 WL

3    3105985, at *4 (W.D. Wash. June 25, 2018) does not state that exceptions to the FLSA must be

4    pled as affirmative defenses.

5

6

Plaintiffs' cited case of *Magana v. Com. of the Northern Mariana Island*, 107 F.3d 1436

(9th Cir. 1997) deals with a different statute than the one at issue here.

7

8

9

10

An affirmative defense need not include extensive factual allegations in order to give

fair notice. *Hartford Underwriters Insurance Company v. Kraus USA, Inc.*, 313 F.R.D. 572

(N.D. CA 2016).  In this case, Defendant pled the following affirmative defenses that apply to

FLSA exceptions:

11

12

2.1    Plaintiffs have failed to state a claim upon which relief can

be granted.

13

2.2    Plaintiffs have unclean hands.

14

15

2.3    Plaintiffs' damages, if any, were caused in whole or in part

by their own fault and/or negligence.

16

….

17

18

2.7    Plaintiffs' damages, if any, are barred by the doctrines of

equitable estoppel and/or waiver.

19

….

20

21

2.10    Plaintiffs may have committed misrepresentation and/or

fraud.

22

23

24

25

At issue here is whether Defendant can raise 29 USC §203(e)(4)(A), which is simply

the definition of an employee under the statute that Plaintiffs are bringing this lawsuit under.

Plaintiffs' argument that Defendant cannot cite the definitions section of the statute that

Plaintiffs brought this lawsuit under is not credible.  Defendants may apply the statute that the

LEE
SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1    lawsuit was brought under.

2          Furthermore, Plaintiffs claim that further discovery would be needed into these

3    allegedly new affirmative defenses, but list no further discovery that they would need to

4    conduct.  Under Plaintiffs' own cited case of *Magana*, a defendant may raise an affirmative

5    defense for the first time in a motion for summary judgment if the delay does not prejudice the

6    plaintiff.  107 F.3d at 1446.

7          Similarly, with regards to Plaintiffs' state law claims, Plaintiffs somehow claim that

8    Defendant is precluded from looking at the definitions sections of the statute that Plaintiffs are

9    bringing their case under, RCW 49.46.010.  As with Plaintiffs' claims under the FLSA,

10   Defendants may apply the statute that the lawsuit was brought under.

11         **2.      Plaintiffs Are Not Employees Under the Fair Labor Standards Act.**

12         Plaintiffs allege they are employees, not volunteers, under the Fair Labor Standards Act

13   ("FLSA"), 29 USC §201 et seq.  Because they claim they are employees, they allege the

14   District violated the minimum wage and overtime pay requirements under the Act.  The

15   question of whether or not a party is an eligible employee under the Act is a question of law.

16   *Mendel v. City of Gibraltar*, 727 F.3d 565, 568 (6th Cir. 2013).

17         Plaintiffs are volunteers, and thus the FLSA does not apply.  Plaintiffs are volunteers

18   both under the economic realities test, and also under the FLSA exception for volunteers of a

19   public agency.  Defendant will discuss each in turn below.

20         First, the FLSA broadly defines an employee as any individual employed by an

21   employer.  29 USC §203(e)(1).  "Employ" means to "suffer or permit to work."  *Id.* at §203(g).

22   The FLSA also provides that the term "employee" does not include any individual who

23   volunteers for a public agency if the individual receives no compensation or is paid expenses,

24   reasonable benefits, or a nominal fee, and the services are not the same type of services which

25   the individual is employed to perform for such public agency.  *Id.* at §203(e)(4)(A).

To determine whether an individual is an employee under the FLSA, courts have adopted an "economic reality" test.  In applying the economic reality test, courts generally look at (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.  *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440–41 (10th Cir. 1998).  None of the factors alone is dispositive; instead, the court must employ a totality of the circumstances approach.  *Id.*

Those seeking compensation under the FLSA bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act.  *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999).  Once this burden is met, the employer bears the burden of proving entitlement to any exemptions or exceptions to the FLSA's compensation requirements.  *Id.*

Here, Plaintiffs are volunteers, not employees, under the test.  The District maintains limited control over the firefighters.  They control aspects of the work, but have little to no control over the scheduling.  Volunteers do not have set shifts or work days; they sign up for or request certain shifts.  They can work as many or as few as they want.

There is also no opportunity for worker profit or loss.  The volunteer is compensated for the shifts worked, but that is all.  There are no bonuses or overtime opportunities.  While the volunteers can elect to take additional shifts at the racetrack, this is essentially side-work as it is controlled and paid by the racetrack, not the District.  Additionally, the workers have no investment in the business, i.e. the District, as it is not a business, but a governmental entity.  In terms of the permanence of the working relationship, none of the volunteers have contracts that guarantee work for a set period of time.  Both Plaintiffs in this case had been volunteering with the District for fewer than three years.  There was no permanence of their working relationships

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1  with the District and Plaintiffs were free to refuse shifts or accept employment elsewhere at any

2  time.

3  Regarding the degree of skill required element, there are certain requirements to being a

4  firefighter, whether volunteer or employee, but courts have found that this does not

5  automatically render all firefighters employees.  Certain skills, qualifications, training, and

6  certifications are required of all firefighter volunteers and employees in this case.  However,

7  this is common throughout this field; it is well-known that firefighters and EMTs require

8  specific training.  "[T]he fact that a "volunteer" firefighter, like a part-time paid firefighter,

9  must maintain various certifications, does not illuminate any distinction in status between the

10  volunteer and the employee."  *Krause v. Cherry Hill Fire Dist. 13*, 969 F. Supp. 270, 275

11  (D.N.J. 1997).  While the work performed is an integral part of the employer's "business," this

12  is not a normal business.  The District is a branch of government, a non-profit.

13  Ultimately, the economic realities shows that Plaintiffs are volunteers, not employees.

14  This is not a situation wherein a business is seeking to exploit individuals for profit by

15  classifying them as "volunteers."  *See Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140

16  (4th Cir. 1999) (courts have looked at whether the worker has displaced a bona fide applicant

17  who desired to sell his services at prevailing rates, or to be an exploited unorganized laborer,

18  evils which the Act was designed to prevent).  This is a common practice utilized by public fire

19  districts.  In addition, when the Court looks at the exception to the FLSA and the nominal fees

20  paid, it is clear that Plaintiffs are volunteers, not employees.

21  Second, Plaintiffs fall under the exception of the FLSA for volunteers of a public

22  agency.  The exception provides that the term "employee" does not include any individual who

23  volunteers for a public agency if the individual receives no compensation or is paid expenses,

24  reasonable benefits, or a nominal fee, and the services are not the same type of services which

25  the individual is employed to perform for such public agency.  29 USC §203(e)(4)(A).  Here,

the District is a public agency.  Plaintiffs volunteered and received a nominal fee in exchange for the services provided.  Further, they are not already employed by the District to perform the same work as the work they perform as volunteers.

Courts have found that the issue of compensation is significant.  If volunteers are only paid a nominal fee, they are more likely to be considered volunteers under the exception.  However, if firefighters are paid more substantial compensation or an hourly wage, then they are more likely to be considered employees.  "Volunteers may be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers."  29 C.F.R. § 553.106(a).  The specific provision addressing nominal fees provides, in part, "A nominal fee is not a substitute for compensation and must not be tied to productivity.  However, this does not preclude the payment of a nominal amount on a 'per call' or **similar basis to volunteer firefighters**."  29 C.F.R. § 553.106(e) (emphasis added).  Finally, the regulations caution: "Whether the furnishing of expenses, benefits, or fees would result in individuals' losing their status as volunteers under the FLSA can only be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation."  29 C.F.R. § 553.106(f).

Other courts have addressed the compensation issue.  In *Mendel v. City of Gibraltar*, the court was faced with the issue of whether the wages paid to firefighters were "compensation" or merely a "nominal fees."  *Mendel v. City of Gibraltar*, 727 F.3d 565, 570 (6th Cir. 2013).  The court found, "If the hourly wages are compensation, then the firefighters are employees under the FLSA.  Conversely, if the wages are merely a nominal fee, then the firefighters are volunteers expressly excluded from the FLSA's definition of employee." *Id.*  However, in that case, the firefighters were paid by the hour ($15 per hour), not on a per-call basis.  The court found that was substantial compensation and therefore the firefighters were employees.  The

1  present case is distinguishable because here, the volunteers are paid purely on a per-shift basis,

2  not an hourly basis.

3      In this case, Plaintiffs are paid a set stipend per shift that they volunteer to take.  This

4  stipend has nothing to do with the number of calls they respond to or how productive they are.

5  29 C.F.R. § 553.106(e).  This is not an hourly wage or anything that amounts to close to

6  minimum wage.  *Mendel*, 727 F.3d at 570.  Plaintiffs in this case were paid a nominal fee that

7  would amount to $4.17 per hour.  29 USC §203(e)(4)(A); 29 C.F.R. § 553.106(a).  The FLSA

8  exception for volunteers of a public agency clearly applies.

9      Plaintiffs also argue that they were not volunteers because they earned more money

10  when working at the Ridge.  This argument ignores that Defendant and the Ridge are separate

11  entities, and thus Mr. Aponte's alleged employment with the Ridge is irrelevant to the current

12  analysis.

13      First, it is uncontroverted that Jennifer Self never performed any work at the Ridge, so

14  this argument does not apply to her.

15      Under 29 C.F.R. § 553.101(d), "An individual shall not be considered a volunteer if the

16  individual is otherwise employed by the same public agency to perform the same type of

17  services as those for which the individual proposes to volunteer."  C.F.R § 553.103 defines

18  same type of services.  In this case, Mr. Aponte was clearly not working for the "same public

19  agency" when he was working for the Ridge, a separate private entity.

20      Under 29 U.S.C. § 203(g): "'Employ' includes to suffer or permit to work."

21      In this case, Mr. Aponte was not acting in the interest of Defendant when he provided

22  standby services at the Ridge.  The Ridge is a private company receiving a benefit for which

23  the Ridge is the last payor.  Mr. Aponte may not respond to a District emergency when working

24  the standby shift.  The Ridge is not acting in the interest of Defendant when the Ridge receives

25  services from Mr. Aponte.

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1
2
3

Defendant did not control the Ridge's supervision of Mr. Aponte or otherwise police the Ridge's contract.  Defendant's involvement was solely limited to initially paying Mr. Aponte then receiving full reimbursement from the Ridge.

4
5
6
7

Ultimately Defendant did not "suffer or permit" Mr. Aponte to work at the track.  Mr. Aponte requested these shifts, and the shift schedules were provided by the Ridge, not Defendant.  Thus, Mr. Aponte was clearly not employed by Defendant when performing work for the Ridge.

8
9
10

The truth is that Plaintiffs were paid $50 per 12-hour shift and $100 per 24-hour shift.  This is a nominal fee.  29 USC §203(e)(4)(A).  They were not paid hourly, they were paid per shift.

11
12
13
14

Plaintiffs appear to cite to an opinion letter by the U.S. Department of labor, which is not a proper source of law for purposes of a summary judgment motion.  Furthermore, this opinion would not be admissible in evidence, and thus this Court may not consider it.  F.R.C.P. 56(c)(2).

15
16
17
18

Plaintiffs also argue that their stipend pay was tied to productivity.  This argument does not make sense.  Plaintiffs did not make more money the more productive they were.  They made more money if they signed up for more shifts.  Productivity and time spent on shifts are two different things.

19
20
21
22
23
24

Plaintiff cites to exhibits 6 and 7 for evidence of how many hours they volunteered at Defendant.  However, neither of these exhibits have been authenticated under ER 901, and thus they would be inadmissible at trial.  As such the Court may not consider them.  F.R.C.P. 56(c)(2).  Even if the Court could consider them, the test under 29 USC §203(e)(4)(A) considers whether the individual received nominal compensation, not how many hours they were compensated for.  Plaintiffs cite no authority to the contrary.

25

LEE SMART
ls
701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1   Plaintiffs also cite *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S.

2   290, 301 (1985), but that case states that the test of employment is the economic realities test,

3   which Defendant analyzed above.

4   Plaintiffs also cite *Mendel v. City of Gibraltar*, 727 F.3d 565, 570 (6th Cir. 2013),

5   which is clearly distinguishable.  As discussed above, in *Mendel v. City of Gibraltar*, the court

6   was faced with the issue of whether the wages paid to firefighters were "compensation" or

7   merely a "nominal fees."  *Mendel v. City of Gibraltar*, 727 F.3d 565, 570 (6th Cir. 2013).  The

8   court found, "If the hourly wages are compensation, then the firefighters are employees under

9   the FLSA.  Conversely, if the wages are merely a nominal fee, then the firefighters are

10  volunteers expressly excluded from the FLSA's definition of employee."  *Id.*  However, in that

11  case, the firefighters were paid by the hour ($15 per hour), not on a per-call basis.  The court

12  found that was substantial compensation and therefore the firefighters were employees.  The

13  present case is distinguishable because here, the volunteers are paid purely on a per-shift basis,

14  not an hourly basis, and the pay is nominal at the equivalent of $4.17 per hour, not $15 per hour

15  as in *Mendel*.

16  Plaintiffs claim that they relied on their volunteer stipends from Defendant for income,

17  but the exhibits produced do not support this assertion.  The quote from Luis Aponte's

18  deposition merely states that he quit his prior job at Walmart because he did not need to work

19  there anymore (Ex. 25 p. 17:3-7).  The quote from Jennifer's Self's deposition shows the

20  opposite of what Plaintiff claims – she testified that she stated a new position because her work

21  at Defendant was not able to sustain her income.  (Ex. 23 p. 20:20-23).  The quote from

22  Lieutenant Byron Orme also contradicts Plaintiffs' claims, as he testified that the volunteer

23  program at Defendant was not intended to sustain an individual's income.  (Ex. 24 p. 61:3-

24  62:18).  Plaintiffs also cite to an unauthenticated exhibit, Exhibit 17, which this Court may not

25  consider on summary judgment under F.R.C.P. 56(c)(2).



1    However, whether Plaintiffs relied on their volunteer stipends for income is irrelevant to

2    either the economic realities test or 29 USC §203(e)(4)(A).

3    Plaintiffs also pretend that Defendant has admitted that Plaintiffs were employees in

4    order to attempt to distract the Court from proper use of the economic realities test.  Even were

5    this true, this is not a factor in the economic realities test, and has no bearing on the Court's

6    analysis.   However, Plaintiffs' contention that Defendant has admitted that Plaintiffs are

7    employees is divorced from reality and does not withstand a simple reading of Plaintiffs' cited

8    exhibits, which range from Chief Welander's understanding of WAC 296.305 (Ex. 18 at 11:21-

9    25; 12:1-6), a description of duties at the Ridge (Ex. 19 at 25:7-25), an explanation of

10   Defendant's finances (Ex. 19 at 95:25-96:22), an explanation of how those who join Defendant

11   are volunteers (Ex. 21 at 85:7-17), and comparing apples to oranges with paid part-time

12   employees that were paid with COVID relief funds after Plaintiffs were no longer volunteers at

13   Defendant (Ex. 19 at 93:7-94:1).  Furthermore, Plaintiffs' citation of Ex. 22, p. 24:25-26:16

14   does not contain Plaintiffs' alleged quote that the only reason that Plaintiffs were volunteers

15   was due to lack of funding.

16          **3.      Plaintiffs Are Not Employees Under State Law Either.**

17   Plaintiffs are not employees under state law either.  Plaintiffs claim they are entitled to

18   both minimum wage and overtime pay under state law as employees.  Yet Plaintiffs clearly fall

19   under exceptions to both laws as volunteers.

20   First, Plaintiffs seek minimum wage for hours worked under RCW 49.46.  Yet Plaintiffs

21   clearly fall under two exceptions to the minimum wage law under RCW 49.46.010(3).

22   First, Plaintiffs fall under the exception contained in RCW 49.46.010(3)(d):

23          Any individual engaged in the activities of an educational,
24          charitable, religious, state or local governmental body or agency,
             or   nonprofit   organization   where   the   employer-employee
25          relationship does not in fact exist or where the services are

DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT -
12
7056721.doc

1
2
3
4
5

> rendered to such organizations gratuitously. If the individual receives reimbursement in lieu of compensation for normally incurred out-of-pocket expenses or receives a nominal amount of compensation per unit of voluntary service rendered, an employer-employee relationship is deemed not to exist for the purpose of this section or for purposes of membership or qualification in any state, local government, or publicly supported retirement system other than that provided under chapter 41.24 RCW;

6
7
8
9
10

In this case, Plaintiffs worked for a local governmental body or agency. *Id.* Plaintiffs received a nominal amount of compensation per unit of voluntary service rendered; in this case volunteers were paid $50 per 12-hour shift and $100 per 24-hour shift with the District. *Id.* Thus, an employee-employer relationship is deemed not to exist for purpose of RCW 49.46. *Id.*

11
12
13
14

Second, Plaintiffs also fall under the exception contained in RCW 49.46.010(3)(j):

> Any individual whose duties require that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties;

15
16
17

In this case, Plaintiffs' duties required that they reside or sleep at the fire station while subject to call, not engaged in the performance of active duties, i.e. responding to 911 calls. *Id.* Thus, Plaintiffs were volunteers, not employees.

18
19
20
21
22
23
24
25

Also, of note is RCW 49.46.065, which states:

> When an individual volunteers his or her labor to a state or local governmental body or agency and receives pursuant to a statute or policy or an ordinance or resolution adopted by or applicable to the state or local governmental body or agency reimbursement in lieu of compensation at a nominal rate for normally incurred expenses or receives a nominal amount of compensation per unit of voluntary service rendered such reimbursement or compensation shall not be deemed a salary for the rendering of services or for purposes of granting, affecting or adding to any qualification, entitlement or benefit rights under any state, local government or publicly supported retirement system other than that provided under chapter 41.24 RCW.

DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT -
13
7056721.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

In this case, Plaintiffs volunteered their labor for a local governmental body or agency and received a nominal amount of compensation per unit of voluntary service rendered, under policy of the local governmental agency or body. *Id.* In this case volunteers were paid $50 per 12-hour shift and $100 per 24-hour shift with the District. Thus, under RCW 49.46.065, Plaintiffs' nominal compensation is not deemed a salary. *Id.*

Case law supports the notion that volunteer firefighters are volunteers, not employees. In *Doty v. Town of South Prairie*, 155 Wn.2d 527, 547,120 P.3d 527 (2005), the Supreme Court of Washington held that a volunteer firefighter did not qualify as an employee or worker under the Industrial Insurance Act. In reaching this holding, the court analyzed whether the nominal compensation received by the volunteer firefighter plaintiff constituted wages, opining:

> In light of our Minimum Wage Act, chapter 49.46 RCW, it is highly unlikely that our legislature would consider the stipend the Town paid Doty as constituting remuneration for the fire fighting services she performed. Doty received the same small stipend amount regardless of the duration of the call and the extent of the services performed. This is not remuneration for her services, but more reasonably, maintenance and reimbursement for expenses incurred in performing her assigned duties, such as reimbursement for travel and food expenses a volunteer inevitably incurs in responding to calls.

*Id.* at 542.

The analysis for Plaintiffs' claims for overtime wages is similar. Under RCW 49.46.130(2)(a): "(2) This section does not apply to: (a) Any person exempted pursuant to RCW 49.46.010(3)."

Thus, the analysis is the same as above. As discussed above, Plaintiffs fall under two exceptions contained in RCW 49.46.010(3), and thus are not eligible for overtime under RCW 49.46.

DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT -
14
7056721.doc

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1    Furthermore, Plaintiffs were not employed for longer than forty hours, as that was never

2    a requirement.  Under RCW 49.46.130(1):

3
            Except as otherwise provided in this section, no employer shall
4           employ any of his or her employees for a workweek longer than
            forty hours unless such employee receives compensation for his or
5           her employment in excess of the hours above specified at a rate not
            less than one and one-half times the regular rate at which he or she
6           is employed.

7    In this case, Plaintiffs were never employed for a workweek longer than forty hours.  *Id.*

8    Plaintiffs were free to sign up for the number of hours they chose.  If Plaintiffs chose to work

9    more than forty hours in any given week, it was entirely Plaintiffs' choice.

10    In this section of their motion, Plaintiffs once again attempt to pretend that they were

11    employees of Defendant when performing services for the Ridge.  This argument ignores that

12    Defendant and the Ridge are separate entities, and thus Mr. Aponte's alleged employment with

13    the Ridge is irrelevant to the current analysis.

14    First, it is uncontroverted that Jennifer Self never performed any work at the Ridge, so

15    this argument does not apply to her.

16    Under RCW 49.46.010(2), "'Employ' includes to permit to work."

17    In this case, Mr. Aponte was not acting in the interest of Defendant when he provide

18    standby services at the Ridge.  The Ridge is a private company receiving a benefit for which

19    the Ridge is the last payor.  Mr. Aponte may not respond to a District emergency when working

20    the standby shift.  The Ridge is not acting in the interest of Defendant when the Ridge receives

21    services from Mr. Aponte.

22    Defendant did not control the Ridge's supervision of Mr. Aponte or otherwise police the

23    Ridge's contract.  Defendant's involvement was solely limited to initially paying Mr. Aponte

24    then receiving full reimbursement from the Ridge.

25    Ultimately Defendant did not "permit" Mr. Aponte to work at the track.  Mr. Aponte

DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT -
15
7056721.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1    requested these shifts, and the shift schedules were provided by the Ridge, not Defendant.

2    Thus, Mr. Aponte was clearly not employed by Defendant when performing work for the

3    Ridge.

4        Plaintiffs also claim for the first time in this lawsuit that they received year-end

5    bonuses, but do not substantiate this claim.  Plaintiffs appear to confuse the points system used

6    by volunteers that live within the district to the stipend shift system used by volunteers that live

7    outside the district, such as Plaintiffs.

8        Plaintiffs again appear to cite to an opinion letter by the U.S. Department of labor,

9    which is not a proper source of law for purposes of a summary judgment motion.  Furthermore,

10   this opinion would not be admissible in evidence, and thus this Court may not consider it.  A

11   court should only consider admissible evidence when ruling on motion for summary judgment.

12   *Burmeister v. State Farm Ins. Co.*, 92 Wn. App. 359, 365, 966 P.2d 921 (1998).  This letter is

13   even less persuasive in this section as it applies to federal law, not Washington state law, which

14   is the subject of this section of Plaintiffs' motion.

15       Plaintiff again cites to exhibits 6 and 7 for evidence of how many hours they

16   volunteered at Defendant.  However, neither of these exhibits have been authenticated under

17   ER 901, and thus they would be inadmissible at trial.  As such the Court may not consider

18   them.  A court should only consider admissible evidence when ruling on motion for summary

19   judgment.  *Id.*  Even if the Court could consider them, the test under RCW 49.46.010(3)(d) and

20   RCW 49.46.065 considers whether the individual received nominal compensation, not how

21   many hours they were compensated for.  Plaintiffs cite no authority to the contrary.

22       Plaintiffs also make an irrelevant comparison to another program provided by

23   Defendant as somehow proving that Plaintiffs do not fall under RCW 49.46.010(3)(j).  Yet

24   Plaintiffs admit that they slept at the bunkhouse during their 24 hour shift and that they were on

25

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1  call during their jobs, so RCW 49.46.010(3)(j) clearly applies.  The statute appears tailor made
2  for volunteer firefighters.

3       **4.      Plaintiffs Were Not Employees Under Either FLSA or Washington Law.**

4       In this section, Plaintiffs employ the economic realities test used by Defendant above.
5  Defendant will not repeat its analysis of the economic realities test, and will rely on the above
6  analysis.

7       With regards to Plaintiffs' arguments regarding the economic realities, Plaintiffs are
8  unable to point to any evidence to support their claims with regards to two of the six factors
9  that they cite: the degree of skill the work entails and the extent of the worker's investment in
10 equipment or materials.  *Anfinson v. FedEx Ground Package Sys., Inc*., 174 Wn.2d 851, 856,
11 281 P.3d 289, 292 (2012).  This is because no evidence exists in this matter to support these
12 two factors, which account for one-third of the factors that the Court must consider.

13      With regards to the permanence of the working relationship between the parties,
14 Plaintiffs are unable to present any evidence of any sort of permanence in the working
15 relationship.

16      With regards to the worker's opportunity for profit or loss, this case is analogous to
17 *Herman v. Express Sixty-Minutes Delivery Service, Inc.*, 161 F.3d 299 (5th Cir. 1998).  In that
18 case, the lower court held that an alleged employee's ability to make a profit was determined
19 by the alleged employees to a greater extent than the alleged employer, which the Fifth Circuit
20 upheld.  *Id.* at 304.  In the present case, Plaintiffs' ability to make money was determined
21 entirely by them.  Plaintiffs could sign up for more shifts and make more money, or they could
22 sign up for no shifts and make no money.  Plaintiffs' situation in this case is analogous to the
23 alleged employee' situation in *Herman*.  *Id.*  Plaintiffs' claims that they were paid a fixed
24 hourly rate, when in fact they alone chose how many shifts to sign up for, is not supported by
25 evidence.

**LS LEE SMART**

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1   With regards to the degree of the alleged employer's control over the worker, Plaintiffs

2   ignore that they signed up for their own shifts.  Plaintiffs were in complete control over their

3   schedule.  Plaintiffs allege that they were required to sign up for additional shifts, yet the cited

4   exhibit do not provide any evidence to substantiate this claim.  An alleged "guilt trip" is a far

5   cry from control over an employee.  Plaintiffs point to no consequences for not signing up for

6   additional shifts because none existed.

7   With regards to whether the services rendered by the worker were an integral part of the

8   alleged employer's business, the Plaintiffs again ignore that they signed up for shifts.  Had they

9   not signed up for shifts, either someone else would have filled the shifts, or the shifts would

10   have gone unfilled.

11   Plaintiffs also pretend that Defendant has admitted that Plaintiffs were employees in

12   order to attempt to distract the Court from proper use of the economic realities test.  Even were

13   this true, this is not a factor in the economic realities test, and has no bearing on the Court's

14   analysis.  However, Plaintiffs' contention that Defendant has admitted that Plaintiffs are

15   employees is divorced from reality and does not withstand a simple reading of Plaintiffs' cited

16   exhibits, which range from Chief Welander's understanding of WAC 296.305 (Ex. 18 at 11:21-

17   25; 12:1-6; 12:16-21), a description of duties at the Ridge (Ex. 19 at 25:7-25), and an

18   explanation of how Defendant does not have the money to pay for employees (Ex. 20 at 19:19-

19   20:12).

## VI.  CONCLUSION

21   For the foregoing reasons, Defendant respectfully requests that this Court deny

22   Plaintiffs' motion for partial summary judgment.

23   / / /

24   / / /

25   / / /

DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT -
18
7056721.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

2

Respectfully submitted this 24th day of October, 2022.

LEE SMART, P.S., INC.

3

4

5

By: _____

Steven G. Wraith, WSBA No. 17364
Erik R. Connell, WSBA No. 46365
Of Attorneys for Defendant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT -
19
7056721.doc

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com