Hon. David G. Estudillo

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| LUIS APONE and JENNIFER SELF,<br><br>                            Plaintiffs,<br><br>     v.<br><br>MASON COUNTY FIRE PROTECTION DISTRICT NO. 16 a/k/a WEST MASON FIRE,<br><br>                            Defendant. | **Case No. 3:21-cv-5459-DGE**<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>*NOTE FOR MOTION CALENDAR*: **OCTOBER 28, 2022**<br><br>*ORAL ARGUMENT REQUESTED* |

## I.     INTRODUCTION AND RELIEF REQUESTED

Plaintiffs' Motion for Partial Summary Judgment should be granted for the reasons set forth in Plaintiffs' original motion (Dkt. 46) and the reasons set forth below.

## II.     EVIDENCE RELIED UPON

This Motion is supported by the declaration of Vera P. Fomina ("*Fomina Decl.*"), the exhibits thereto, and the pleadings and records on file with the Court.

## III.     ARGUMENT AND AUTHORITY

**A.     Affirmative Defenses of The FLSA/MWA Exemptions Have Been Waived**

MWA and FLSA exemptions are affirmative defenses. *See, e.g.*, *David v. Bankers Life & Cas. Co.*, C14-766RSL, 2018 WL 3105985, at *4 (W.D. Wash. June 25, 2018); *Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1445 (9th Cir. 1997) (citing *Jones v. Giles*, 741 F.2d 245, 248-249 (9th Cir. 1984), Fed. R. Civ. P. (8)(c), (b), (g) and finding that FLSA exemptions are affirmative defenses that must be pleaded and proved by the defendant). Affirmative defenses must be asserted in a responsive pleading. *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1080 (9th Cir. 2016) (quoting Fed. R. Civ. P. 8(c)(1)). An employer cannot assert affirmative defenses the first time in summary judgment, unless doing so does not prejudice the plaintiff. *Harting v. Barton*, 101 Wn. App. 954, 962, 6 P.3d 91, 95 (2000) (internal citations omitted) ("Generally, affirmative defenses are waived unless they are (i) affirmatively pleaded, (ii) asserted in a motion under CR 12(b), or (3) tried by the express or implied consent of the parties."); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1984). Here, Defendant pled other affirmative defenses unrelated to the MWA and FLSA exemptions. Dkt. 9 at 5, 10 at 5, 22 at 7, and 60 at 4. Nowhere in the affirmative defenses are MWA and FLSA exemptions mentioned. Given that Defendant has not timely asserted these exemptions, any belated attempt to litigate the issue through the Motion for Summary Judgment is extremely prejudicial to Plaintiffs as they have not been able to conduct discovery on these exemptions.

### B.     Plaintiffs Were Employees Under the FLSA and MWA

A nonmoving party's mere allegation that factual disputes exist between the parties will not defeat an otherwise properly supported motion seeking summary judgment. Fed. R. Civ. P. 56(c). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136,

1142, 2022 U.S. Dist. LEXIS 3973, *1, 2022 AMC 10, 2022 WL 80429. In its Opposition to Plaintiffs' Motion, Defendant argues that Plaintiffs were not employees, yet not once does Defendant cite to a single piece of evidence to support its argument. Dkt. 60 at 5-7; 17-18. Moreover, Defendant's unsubstantiated arguments are flawed.

Defendant states that under the economic realities test, Defendant maintained limited control over the firefighters. Dkt. 60 at 6:14-17. Then, Defendant immediately states that Defendant controlled "aspects of the work" but not their schedules. *Id.* This is a blatant admission that the control element is met. Moreover, the record clearly supports the control element. Dkt. 46 at 23:9-26; 24:1-10 (containing extensive citations to relevant deposition excerpts and documents). Also, the profit/loss element weighs in favor of Plaintiffs being employees. Defendant admits that Plaintiffs were paid $50 per 12-hour shift and $100 per 24-hour shift. Dkt. 60 at 10:8-9. The math is simple – it is $4.17 per hour regardless of the length of the shift. Similarly, firefighters were compensated at an hourly rate ($15 or $20 per hour) for the work at the Ridge. Plaintiffs worked not just 12 and 24-hour shifts but were also compensated for fractions of shifts at either $15 per hour rate (at the Ridge) or $4.17 per hour rate (outside the Ridge).[1] Accordingly, Plaintiffs' hourly rate indicates there was no opportunity for profit or loss. *Mathis v. Hous. Auth.*, 242 F. Supp. 2d 777, 785 (2002) (finding the fact that plaintiff was paid a fixed hourly rate, and, therefore had no opportunity for profit or loss other than by charging for the number of hours that she worked, weighs toward plaintiff being an employee); *Olson v. United States*, 2018 U.S. Dist. LEXIS 75574, *24-25 (citing *Murphy*, 157 F.Supp.3d at 927 (plaintiff billed patients for his services and collected payments but had no control over what he chose to charge); *Chao*, 709 F.Supp.2d at 1065 ("Where

---

[1] For example, Plaintiffs worked 2.5, 3.25, 4, 5, 5.75, 6, 6.25, 6.5, 7, 7.25, 8.75, 10.5-hour shifts. Dkt. 47-1, Exs. 6 and 7 - MCF_000029, 31, 33, 36, 38, 40, 42, 141, 144, 145, 147, 151, 153, 154, 355, 358.

workers are paid fixed hourly wages with no opportunity for commission or bonus, this weighs in favor of employee status."). Same as in *Olson* and *Mathis*, this factor weighs in favor of employee status.

Defendant misleads the Court by stating that Plaintiffs purportedly failed to provide any evidence that Plaintiffs did not invest in equipment or materials. *See* Dkt. 60, at 17:7-10. As stated in Plaintiffs' Motion, Plaintiffs did not invest in equipment or materials because Defendant provided it to them. Dkt. 46, at 5:10-26 (citing to Dkt. 47, Ex. 5, MCF000745 (Dkt 47-1 at 48), Ex. 18 at 39:6-12 (Dkt. 47-1 at 250); Dkt. 48 ¶ 3, Dkt. 49 ¶ 4). Moreover, Defendant admits that the "workers have no investment in the business." Dkt. 60 at 6:21-22. This factor likewise favors an employee relationship. *See Mathis*, 242 F. Supp. 2d at 784 (finding the "investment" factor weighs in favor of the employee relationship where plaintiff made no investment in either equipment or materials required for her work).

Disputing the permanency element, Defendant states that Plaintiffs did not have contracts that guaranteed work for a set period of time. Dkt. 60 at 6:23-24. However, this was a relationship that was supposed to last for an indefinite duration of time and was, therefore was an employment relationship. *Mathis*, 242 F. Supp. 2d at 785 (because plaintiff's position was for an indefinite duration and either party could terminate the relationship at any time, this fact favored an employee relationship).

As for the skill element, Defendant provided extensive work-related training to Plaintiffs. Dkt. 46 at 5:20-24; 22:13-19. It is also undisputed that Plaintiffs did not exercise significant business-like initiative in locating work opportunities and were, therefore, employees. *Mathis*, 242 F. Supp. 2d at 784 (citing *Brock v. Superior Care, Inc.*, 840 F2d 1054, 1060 (2nd Cir 1988) ("The fact that workers are skilled is not itself indicative of independent contractor status. A variety of

skilled workers who do not exercise significant initiative in locating work opportunities have been held to be employees under the FLSA.")

Defendant admitted that the work performed by Plaintiffs was an integral part of Defendant's business. Dkt. 60 at 7:11-13. Defendant now appears to make an argument that it is not a business and that no work performed by its firefighters could be integral. *Id.* Yet, Defendant fails to provide any authority or evidence to show any relevance of this fact as to this factor or cite to any law that would substantiate its assertion. *Id.*

Finally, Defendant disingenuously states that it did not seek to exploit employees for profit by classifying them as "volunteers" and that this is a common practice utilized by public fire districts. Dkt. 60 7:13-20. While it might be common practice to allow individuals to volunteer a few hours per month, making firefighters (such as the Plaintiffs in the present matter) work more than 3,000 hours per year is not indicative of having volunteers. Opinion Letter FLSA2006-28 at 4 (Doc. 40-11) ("it is unlikely that 3,000 hours of service (50+ hours per week) is 'volunteering' rather than employment"); Dkt. 46 at 15:8-15. Per Defendant's admission, this is more characteristic of the number of hours employee firefighter would work. Dkt. 46 at 5:12-17, Dkt. 47-1, Ex. 19 at 94:13-19 (Welander stating that a career firefighter works on average 2,568 hours per year, which is "214 hours a month times 12.").

C.   **Plaintiffs Do NOT Fall Within the FLSA Volunteer Exemption**

The FLSA exemptions do not apply to Plaintiffs. First, as stated above, Defendant waived this as an affirmative defense. Second, Plaintiffs are employees under the FLSA (see the economic realities test analysis; Dkt. 46 at 21-2 and above) and they do not fall within the FLSA exception provided for in 29 U.S.C. 203(e) because (i) the fee Plaintiffs received for their services was not nominal; and (ii) because they could not have volunteered to perform services for the Defendant

and at the same time be employed to perform the same type of services for Defendant. 29 U.S.C. § 203(e)(4)(A).

Defendant failed to point to a single piece of evidence indicating that Plaintiffs' $4.17 per hour pay was somehow nominal. Dkt. 60 at 8-9. Defendant cites to 29 C.F.R. 553.106(a), which states that "a nominal fee is not a substitute for compensation and must not be tied to productivity." Here, Plaintiffs' compensation was not nominal. Plaintiffs worked more hours than typical volunteers. *See* Opinion Letter FLSA2006-28 at 4 (Doc. 40-11); Dkt. 46 at 5:12-17, Dkt. 47-1, Ex. 19 at 94:13-19. Aponte worked 4,311.75 hours in 2019 (an average of 359 hours per month) and Self worked 1,201 hours (or 300.25 hours on average per month) which would amount to 3,603 hours per year. Dkt. 46 at 17-18; Dkt. 47-1 at 217-220 (Exs. 14, 15).[2]

First, relying on Fed. R. Evid. 901, Defendant argues that its own production of Plaintiff's timesheets and payroll records is somehow not admissible at trial. *See* Dkt. 47-1 at 54-192 (Exs. 6 and 7). Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent. *Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1163 (E.D. Cal. 2015) (quoting *Anand v. BP W. Coast Prods. LLC*, 484 F. Supp. 2d 1086, 1092 (C.D. Cal. 2007)); *IP Global Invs. Am., Inc. v. Body Glove IP Holdings*, LP, 2018 U.S. Dist. LEXIS 194461, *23, 2018 WL 5983550; *Cairone v. Prospect Mortgage, LLC*, 2014 U.S. Dist. LEXIS 33572, *5-6. Second, Defendant authenticated these documents under oath during his two depositions as Luis Aponte's and Jennifer Self's time sheets and payroll records. Dkt 47-1 at 271, 273 (Ex. 19 at 65:23-25; 66:1-9; 67:16-25;

---

[2] Moreover, Plaintiffs' wages exceeded the 20% threshold established by the DOL for determining whether the fee is nominal. See Opinion Letter FLSA2005-51. Receipt of pay less than 20% of what a full-time employee would receive for the same service is indicative of volunteer status. *Id.* Here, Defendant paid Plaintiffs $15 per hour for the work at the Ridge (which is 100% of the regular pay for firefighters) and $4.17 per hour regardless of whether they worked a 12- or a 24-hour shift. Defendant also paid $15 per hour for the same work at the Ridge. $4.17 is equivalent to 27.79% of the $15 hourly wage, which clearly exceeds the 20% threshold.

| PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 6 | **SKIDMORE | FOMINA, PLLC**<br>1800 112th Ave NE, Suite 270E<br>Bellevue, WA  98004<br>Tel.: (425) 519-3656 |
|---|---|

68:1-3; 82:1-25; 83:1-3); *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996) (documents produced by a party in discovery were deemed authentic when offered by the party-opponent); *Welenco, Inc. v. Corbell*, 126 F.Supp.3d 1154, 1163-64 (E.D. Cal. 2015) (finding that documents produced in response to discovery requests were admissible given the lack of any argument that the documents were inauthentic); *Del Campo v. Am. Corrective Counseling Serv., Inc.*, 718 F.Supp.2d 1116, 1123 n.10 (N.D. Cal. 2010) ("Since Defendants do not specify any reason to doubt the authenticity of documents that they themselves produced in discovery, the Court finds the documents properly authenticated under Fed. R. Evid. 901."). A document may be authenticated by a witness with knowledge of the document or by any other manner permitted by Fed. R. Evid. 901(b) or 902. *See also Charm Floral v. Wald Imps., Ltd.*, 2012 U.S. Dist. LEXIS 16012, *6, 2012 WL 424581.

Defendant also argues that Plaintiffs were paid not on an hourly, but rather on a per-shift basis. Dkt. 60 (p. 9 ¶ 5-6). But then Defendant immediately admits that this was a $4.17 per hour fee. *Id.* at 7. The bottom line is that 12-hour shifts at $50 per shift and 24-hour shifts at $100 per shift inevitably yield a $4.17 hourly rate. And again, Defendant failed to cite to any fact or evidence that would support the notion that Plaintiffs' pay was nominal. If the Court decides to not rely on the DOL's 20% rule to establish that Plaintiffs were paid more than a nominal fee for their work, the Court should still consider the huge number of hours Plaintiffs worked because the amount of pay could fluctuate month-to-month and year-to-year, exceeding 20% at some points and not at others. *Martinez v. Ehrenberg Fire Dist*., 2015 U.S. Dist. LEXIS 73832, *14.

Defendant's argument that the Ridge is a separate entity is irrelevant. Defendant employed Plaintiffs' services for work for the Defendant and for work at the Ridge. Defendant, not the Ridge, was Plaintiffs' employer at all times. Dkt. 46 at 6:19-26, 7:1-26, *see also* Dkt. 47-1 at 54-

192; 197-206; 215-216 (Exs. 6, 7, 9, 10, 13). Additionally, Defendant not only provided Plaintiffs the opportunity to work at the Ridge, but also provided Plaintiffs with all required training, equipment, gear to perform this work, enabled the scheduling process, administered timekeeping and payroll. *Id.* Moreover, Plaintiffs could not work for the Ridge if not through Defendant. *Fomina Decl.* Ex. 1 (Deposition of Lt. Amy Carpenter) at 155:13-24 (stating that firefighters need to go through the District to have access to the Ridge hourly rate.); Ex. 2 (Deposition of Commissioner Shelly George) at 42:17-24 (stating the positions at the Ridge were supposed to be assigned by the District); Ex. 3 (Deposition of Lt. Byron Orme) at 39:13-25; 40:1-11 (stating that days were not assigned but the District would ask people to not work that day so they had enough people to work the Ridge), and 41:11-25 (Orme confirming that the money from the Ridge comes from the District). Moreover, Defendant testified that it had a contract with the Ridge to provide the Ridge with the EMT services and an ambulance. *Fomina Decl*. Ex. 4. It is illogical to state, as Defendant does in its Opposition, that its employees, ambulance, gear, uniforms, and tools all somehow belong to the Ridge while working on-site. Defendant's argument that Plaintiffs allegedly did not rely on their income from Defendant perverts Self's testimony contained in Ex. 23 at 20:20-23 (Dkt. 47-1 at 297). It is evident that Self testified that after Defendant deprived her of her shifts in 2021, her hours at Defendant were no longer sustaining her income. *Id.* Similarly, Aponte testified that he quit his employment with Walmart because Defendant was taking too much of his time and he was getting enough hours at Defendant. Dkt. 47-1 at 310 (Ex. 25, 17:3-7). The record also shows that Fire Chief Welander knew that Plaintiffs were relying on their

income from Defendant. Dkt. 47-1, Ex. 17.[3] Furthermore, Lt. Byron Orme's statement that the volunteer program was not intended to sustain an individual's income (Dkt. 47-1 at 306; or, Ex. 24, 61:3-62:18) has nothing to do with whether Plaintiffs relied on their income they generated from Defendant. Defendant misrepresents that the evidence of Plaintiffs' reliance on the income from the Defendant is not relevant under 29 U.S.C. 203(e)(4)(A). The regulations define "volunteer" as "[a]n individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered." 29 C.F.R 553.101(a), 553.104(a).

Finally, contrary to Defendants assertion, opinion letters issued by the U.S. Department of Labor are proper sources of law for purposes of a summary judgment. Courts have been deferring to the DOL opinion letters and viewed them as "decisive authority." *Tsyn v. Wells Fargo Advisors, LLC*, 2016 U.S. Dist. LEXIS 18587, *22, 26 Wage & Hour Cas. 2d (BNA) 854, *see also Lillehagen v. Alorica, Inc.*, 2014 U.S. Dist. LEXIS 171179, *20, 2014 WL 6989230 ("It is well established that courts will afford substantial deference to an administrative agency's interpretation of an ambiguous statute.").

**D.**     **Plaintiffs Do Not Fall Under Any Exceptions Under Washington State Laws**

Plaintiffs do not fall under the exceptions outlined in RCW 49.46.010(3)(d), (j) or RCW 49.46.065. Plaintiffs did not receive a "nominal amount of compensation per unit of voluntary service rendered." RCW 49.46.010(3)(d) focuses on (i) whether the services were rendered gratuitously, and (ii) whether the individuals received nominal compensation for these services.

---

[3] Note: Exhibit 17 referred to in Plaintiffs' Motion for Partial Judgment was produced by Defendant in response to Plaintiffs' discovery requests and was authenticated by Fire Chief Welander during his deposition. *Fomina Decl.* Ex. 5 at 126:15-25, 127:1; 129:15-22.

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 9

**SKIDMORE | FOMINA, PLLC**
1800 112th Ave NE, Suite 270E
Bellevue, WA 98004
Tel.: (425) 519-3656

All evidence in this case, including Fire Chief Welander's own admissions, shows that the services were not rendered gratuitously. Dkt. 46 at 6:4-13 (citing Ex. 17 (bullet point 13)). *Id.* at 6:4-8 (citing Ex. 25 at 17:3-7: Ex.23 at 32:1-16). Dkt. 47-1 Exs. 6 and 7 (containing continuous monthly payroll records); Dkt. 52 at 14:11-19 (citing Ex. 2 at 67:16-19; 94:13-19 (Welander testifying that career firefighters generally work 214 hours per month on average)). Defendant points to no evidence that indicates otherwise. Moreover, Plaintiffs received more than nominal compensation for their work. The analysis related to this issue is set forth at length above and in Plaintiffs' Opposition to Defendant's MSJ, Dkt. 52 at 14:3-24. Similarly, besides its conclusory statement that the amount Plaintiffs were paid was nominal, Defendant failed to cite to any fact, evidence, or authority that supports its argument. For the same reasons, RCW 49.46.065 cited by Defendant equally does not apply to Plaintiffs. As argued at length by Plaintiffs, they did not receive a nominal amount of compensation per unit of voluntary service rendered. Defendant merely reiterates that Plaintiffs were paid $50 per 12-hour shift and $100 per 24-hour shift and completely fails to explain and produce a scintilla of evidence as to why this amount is nominal. Defendant's reliance on the *Doty* case is misplaced and Defendant points it out in its own brief. In *Doty,* as cited by Defendant, plaintiff "received the same small stipend amount regardless of the duration of the call and the extent of services performed." *Doty v. Town of South Praire*, 155 Wn.2d 527, 542, 120 P.3d 941, 949 (2005) (emphasis added). Here, there is no dispute that Plaintiffs' pay was hourly, and was directly proportional to the number of hours they worked. Dkt. 47-1, Exs. 6, 7.

The RCW 49.46.010(3)(j) exception does not apply. Plaintiffs were not required to reside or sleep at the place of employment, and they did not spend a substantial portion of their work time subject to call, and not engaged in the performance of active duties. In their Motion for Summary Judgment, Plaintiffs explain at length reasons why they do not fall within this exception by citing

to applicable statute, case law, and specific evidence contained in the record. Dkt. 52 at 14:26; 15:1-16. Defendant's Opposition, on the other hand, is void of any facts or authority to indicate otherwise. Dkt. 60 at 13:11-17.

RCW 49.46.130(1) applies to Plaintiffs because they worked more than 40 hours per week. Defendant's argument that Plaintiffs never worked more than forty hours per week simply because it was never a requirement is disingenuous. First, the statute does not take into consideration whether working more than forty hours per week is a requirement. It clearly states that all that is considered is whether the employee in fact worked more than forty hours per week. Second, as evidenced by Defendant's own timekeeping and payroll records, Plaintiffs in fact worked more than forty hours per week. Dkt. 47-1 at 54-192 (Exs. 6, 7). Third, it was a requirement. Dkt. 46 at 5:3-9 (citing Dkt. 47-1 at 312, 298-299 (Ex. 25 at 29:5-21; Ex. 23 at 33:13-25; 34:1-7; 36:9-25, 37:1-4). Again, Defendant failed to cite to any evidence to the contrary. Moreover, even despite Defendant's incorrect argument that work at the Ridge was somehow not work performed for the Defendant, Plaintiffs continuously worked more than forty hours for Defendant exclusive of the Ridge hours. A detailed explanation that Defendant employed the firefighters when they were working at the Ridge is contained on pages 4, 10 and 11 of Plaintiffs' present Reply.

Defendant perverts the "permit to work" meaning as stated in RCW 49.46.010(2) when applied to the work at the Ridge. Defendant appears to argue that, because Aponte requested the shifts at the Ridge, he immediately became an employee of the Ridge and that he was no longer representing Defendant at the Ridge – all that despite the fact that Defendant's firefighters who worked at the Ridge were paid by Defendant, wore Defendant-issued uniforms, used Defendant-issued ambulance, and other gear and equipment, signed up for shifts through Defendant. *Fomina Decl.* Ex. 1 at 155:13-24; Ex. 2 at 42:17-24; Ex. 3 at 39:13-25; 40:1-11 and 41:11-25.

Finally, Defendant cites to *Burmeister v. State Farm Ins. Co.* to argue that the "opinion letter by the U.S. Department of labor" is inadmissible. Dkt. 60 at 16:8-9. Beyond the fact that Defendant's Opposition does not state to which opinion letter it is referring, *Burmeister* is inapplicable because it only found that an unauthenticated police report was inadmissible at the summary judgment stage. *Burmeister v. State Farm Ins. Co*., 92 Wn. App. 359, 365, 966 P.2d 921 (1998). To the extent Defendant is referring to the 2020 U.S. Department of Labor's Wage and Hour Division's finding that Defendant committed twenty-nine violations under the FLSA (Dkt. 47-1, Ex. 16), that document is admissible and should be considered at this stage. *Quinn v. Everett Safe & Lock, Inc*., 53 F. Supp. 3d 1335, 1339-1340, 2014 U.S. Dist. LEXIS 147153, *5-9. To the extent Defendant is referring to the DOL opinion letters that provide guidance as to the meaning of "nominal fee," other federal courts have considered these letters. *See e.g*. *Martinez*, 2015 U.S. Dist. LEXIS 73832, *14, 165 Lab. Cas. (CCH) P36,351 (considering the DOL's Opinion Letter FLSA2006-28 at 4 (Doc. 40-11) and concluding that firefighters were paid $50 flat-rate for a 24-hour shift, $25 flat-rate for a half-shift, and $10 to $15 per hour while responding to calls during their shifts were not volunteer firefighters).

## VI.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that their Motion for Partial Summary Judgment is **GRANTED**.

Dated: October 28, 2022.

SKIDMORE & FOMINA, PLLC
*/s/ Vera Fomina*
Vera P. Fomina, WSBA No. 49388
Attorney for Plaintiffs