1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| LUIS APONTE and JENNIFER SELF,<br><br>                    Plaintiffs,<br><br>        v.<br><br>MASON COUNTY FIRE PROTECTION DISTRICT NO 16 a/k/a WEST MASON FIRE,<br><br>                    Defendant. | CASE NO. 3:21-cv-05459-DGE<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 43, 46) |

11
12
13
14
15
16
17

## I       INTRODUCTION

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt Nos. 43, 46).  For the reasons discussed herein, the Court DENIES Plaintiffs' motion for summary judgment as to the waiver of Defendant's affirmative defenses, GRANTS Plaintiffs' motion for summary judgment and DENIES Defendant's motion for summary judgment as to whether Plaintiffs were employees under the Fair Labor Standards Act ("FLSA"), DENIES the parties' cross-motions for summary judgment as to whether Plaintiffs were employees under the Washington Minimum Wage Act, Washington Revised Code § 49.46. et seq. ("MWA"),

18
19
20
21
22
23
24

1   DISMISSES without prejudice Plaintiffs' claims for wrongful discharge for lack of jurisdiction,

2   and DENIES Defendant's motion for summary judgment as to Plaintiffs' unjust enrichment

3   claims.

## II   BACKGROUND

5        Plaintiffs Luis Aponte and Jennifer Self have filed suit against their former employer, the

6   Mason County Fire Protection District No. 16, alleging violations of the FLSA and concurrent

7   state employment laws.

8        Defendant Mason County Fire Protection District No. 16 provides firefighting and

9   emergency medical services to parts of Mason County, Washington.  From 2018 to 2020, all

10  firefighters and emergency medical technicians working for Defendant were categorized as

11  volunteers.  (Dkt. No. 44 at 2.)  This categorization was purportedly standard practice throughout

12  Washington and due to budgetary constraints.  (*See* Dkt. Nos. 44 at 2; 51-1 at 275.)  Volunteers

13  were paid $50 per 12-hour shift and $100 per 24-hour shift.  (Dkt No. 44 at 2.)  Defendant also

14  contracted with a local racetrack, known as the "Ridge," to provide on call EMT services.  (*Id.*)

15  While at the Ridge, firefighters received payment of $15 per hour in 2018 and $20 per hour in

16  2019 for on-call services.  (*Id.*)

17       Plaintiff Aponte worked as a volunteer firefighter from approximately July 2018 until

18  January 2020 and Plaintiff Self worked as a volunteer firefighter from approximately August

19  2019 until February 2020.  (*See id.* at 1).  Plaintiff Aponte took shifts at the Ridge while working

20  as a volunteer firefighter for the Defendant.  (Dkt. No. 48 at 2.)  Both Plaintiffs were ultimately

21  terminated by the Defendant in 2020.  (Dkt. Nos. 48 at 2; 49 at 2.)

22

23

24

In 2020, the U.S. Department of Labor's ("DOL") Wage and Hour Division determined that Defendant had misclassified the volunteer firefighters as "volunteers" and that these volunteers fell within the definition of employees under the FLSA.  (Dkt. No. 51-1 at 232–35.)

Plaintiffs filed their original complaint in federal court on June 24, 2021.  (Dkt No. 1.)  On May 3, 2022, Plaintiffs amended their complaint.  (Dkt. No. 21.)  Plaintiffs alleged that Defendant violated the FLSA's minimum wage and overtime provisions when they improperly categorizing them as volunteers.  (Dkt. No. 21 at 4–6.)  Additionally, Plaintiffs asserted various violations of the MWA, including violation of the statute's minimum wage and overtime provisions (*id.* at 5–8) and raised separate state law claims for unjust enrichment and wrongful discharge (*id.* at 8–9).  Plaintiffs seek compensatory and punitive damages, as well as other equitable relief.  (*Id.* at 9–10.)

Defendant filed their answer to Plaintiffs' amended complaint and affirmative defenses on May 10, 2022.  (Dkt. No. 22.)  On September 29, 2022, Defendant moved for summary judgment as to all of Plaintiffs' claims.  (Dkt. No. 43.)  Plaintiffs moved for partial summary judgment as to whether they were employees for purposes of the FLSA and the MWA and for whether the Defendant waived certain affirmative defenses by failing to raise these defenses in their answer.  (Dkt. No. 46.)

## III    DISCUSSION

### A.    Summary Judgment Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party."  *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir.

2017).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Additionally, the moving party may meet their summary judgment burden by establishing through argument that the non-movant has failed to offer any evidence in support of their claims. *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1263 (W.D. Wash. 2013), *aff'd*, 639 F. App'x 484 (9th Cir. 2016); *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000); Fed. R. Civ. P. 56(e)(3).  Where parties have filed cross-motions for summary judgment, "both parties asserting that there are no uncontested issues of material fact, does not vitiate the court's responsibility to determine whether disputed issues of material fact are present. A summary judgment cannot be granted if a genuine issue as to any material fact exists.**"**  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)) (internal quotation marks omitted).

B.      **Adequacy of Factual Record**

Plaintiffs challenge the adequacy of Defendant's affidavit for purposes of summary judgment and assert that Defendant has not put forward sufficient evidence to merit summary judgment.  (*See* Dkt. No. 52 at 7.)  Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Defendant's affidavit is sworn and based on personal knowledge and as such is permissible for the Court to consider at summary judgment, even if self-serving.  *See also S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) ("As we have previously noted, declarations oftentimes will be 'self-serving'—

1    '[a]nd properly so, because otherwise there would be no point in [a party] submitting [them].'").

2    The Court also does not find  any contradiction between Defendant's affidavits and deposition

3    testimony to be so clear and unambiguous as to constitute a "sham" such that the Court may

4    discount them.  *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012)

5    **C.      Defendant Did Not Waive Their Relevant Affirmative Defenses**

6            While Plaintiffs are correct that Defendant should have raised potential exemptions to the

7    categorization of employees under the FLSA and MWA as affirmative defenses, raising these

8    issues at summary judgment has not prejudiced Plaintiffs and as such the Court finds that

9    Defendant has not waived their ability to assert these defenses.

10           Plaintiffs asserts that Defendant waived their ability to raise certain statutory exemptions

11   to the FLSA and the MWA by failing to include them explicitly as affirmative defenses.  (Dkt.

12   Nos. 46 at 12; 61 at 2.)  Defendant, by contrast, argues that exceptions to the FLSA are not

13   affirmative defenses and, even if they are, Plaintiffs have not been prejudiced by Defendant

14   raising these defenses at summary judgment.  (Dkt. No. 60 at 4–5.)

15           Courts have consistently held that exceptions to the FLSA are affirmative defenses that

16   need to be raised in responsive pleadings or risk waiver at a later stage of litigation.  *See Corning*

17   *Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974) ("[T]his view is consistent with the

18   general rule that the application of an exemption under the Fair Labor Standards Act is a matter

19   of affirmative defense on which the employer has the burden of proof."); *Magana v. Com. of the*

20   *N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997), *as amended* (May 1, 1997) (holding

21   that an exemption to the FLSA pursuant to 29 U.S.C. § 213 was an affirmative defense and

22   remanding to the district court to determine whether use of the defense on summary judgment

23   would prejudice the non-moving party); *Jones v. Giles*, 741 F.2d 245, 248 (9th Cir. 1984) ("An

24

1   employer who claims an exemption from the FLSA has the burden of showing that the

2   exemption applies."); *Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 779 (N.D. Ill. 2007)

3   ("More to the point, it has consistently been held that FLSA exemptions may be waived by the

4   employer if not raised in litigation in a proper and timely manner.").

5          Defendant tries to distinguish the Ninth Circuit's holding in *Magana* as confined to § 213

6   of the FLSA (Dkt. No. 60 at 4), but the court in *Magana* cited to its prior holding in *Jones* to

7   support this ruling.  The Ninth Circuit in *Jones* categorically held that exemptions pursuant to the

8   FLSA are affirmative defenses, and did not limit its ruling to § 213, in line with the Supreme

9   Court's dicta in *Corning Glass Works*.  As such, the Court agrees with Plaintiffs that use of 29

10  U.S.C. § 203(e)(4)(A) to exempt volunteer firefighters is an affirmative defense.

11         Similar logic applies to Defendant's MWA exceptions.  Washington courts have noted

12  that "[e]xclusions pertaining to MWA coverage should be construed strictly in favor of the

13  employees so as not to defeat the broad objectives for which the act was passed."  *Tift v. Pro.*

14  *Nursing Servs., Inc.*, 886 P.2d 1158, 1161 (Wash Ct. App. 1995), *as amended on reconsideration*

15  (Mar. 1, 1995) (quoting *Goff v. City of Airway Heights*, 730 P.2d 691, 693 (Wash. Ct. App.

16  1986)).  As such, employers have the burden of establishing that exemptions to the MWA apply

17  to specific employees.  *(Id.)*  This same logic has motivated federal courts to hold that FLSA

18  exemptions are affirmative defenses that need to be asserted pursuant to Federal Rule of Civil

19  Procedure 8(c).  As such, the Court finds that exemptions to employee categorization under the

20  MWA are also affirmative defenses.

21         This does not settle the issue, however.  The Ninth Circuit has liberal pleading standards

22  and "[a]s long as the plaintiff is not prejudiced, affirmative defenses that were not pleaded in an

23  answer may be raised for the first time on summary judgment."  *McGinest v. GTE Serv. Corp.*,

24

247 F. App'x 72, 75 (9th Cir. 2007); *see also* Garcia v. Salvation Army, 918 F.3d 997, 1008 (9th Cir. 2019) (noting that an affirmative defense may be raised at summary judgment if it does not prejudice the non-moving party); *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) ("In the absence of a showing of prejudice, however, an affirmative defense may be raised for the first time at summary judgment.").

Defendant's use of the MWA and FLSA exemptions to employee categorization at summary judgment does not prejudice Plaintiffs. Plaintiffs claim that an attempt to litigate whether these exemptions apply to them is prejudicial as "they have not been able to conduct discovery on the exemptions." (Dkt. No. 46 at 12.) However, Plaintiffs do not state what type of additional discovery they would need to conduct. The parties have already conducted extensive discovery on issues related to Plaintiffs' compensation, labor, and conditions of employment, and there do not appear to be any compelling reasons as to why Plaintiffs are prejudiced by the raising of legal exemptions to the definition of employee under either the FLSA or the MWA. Additionally, the Ninth Circuit has held that "[t]here is no prejudice to a plaintiff where an 'affirmative defense would have been dispositive' if asserted 'when the action was filed.'" *Garcia*, 918 F.3d at 1008 (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)). These defenses, if applicable, would be dispositive to Plaintiffs' claims and as such the Court finds that there is no prejudice to the Plaintiffs and that Defendant can raise these exemptions for the first time at summary judgment.

**D.      Plaintiffs Were Employees Under the FLSA**

a.   <u>Legal Standard</u>

Whether an individual is an employee for purposes of the FLSA is a question of law. *See Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 428 (4th Cir. 2011); *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994).

1    The FLSA provides that employees within the meaning of the Act must be paid a

2    statutorily determined minimum wage and be paid overtime.  29 U.S.C. § 206(a); 29 U.S.C. §

3    207(a)(1).  The Act defines an employee as "any individual employed by an employer" other

4    than those exempted from the definition pursuant to § 203(e)(2)–(4).  29 U.S.C. § 203(e)(1).

5    "'Employ' includes to suffer or permit work."  29 U.S.C. § 203(g).  This broad definition is

6    intended to sweep broadly and "leaves no doubt as to the Congressional intention to include all

7    employees within the scope of the Act unless specifically excluded."  *United States v.*

8    *Rosenwasser*, 323 U.S. 360, 363 (1945); *see also Torres-Lopez v. May*, 111 F.3d 633, 638 (9th

9    Cir. 1997) ("The FLSA's definition of employee has been called the 'broadest definition that has

10   ever been included in any one act.'").

11       While this definition is broad, the Supreme Court has noted that "[a]n individual who,

12   'without promise or expectation of compensation, but solely for his personal purpose or pleasure,

13   worked in activities carried on by other persons either for their pleasure or profit,' is outside the

14   sweep of the Act."  *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 (1985)

15   (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)).  Ultimately, "[t]he test of

16   employment under the Act is one of 'economic reality.'"  *Id.* at 301.  "The FLSA is to be

17   liberally construed to apply to the furthest reaches consistent with Congressional direction. To

18   that end, FLSA exemptions are to be narrowly construed against . . . employers and are to be

19   withheld except as to persons plainly and unmistakenly within their terms and spirit."  *Webster v.*

20   *Pub. Sch. Emps. of Washington, Inc.*, 247 F.3d 910, 914 (9th Cir. 2001) (quoting *Klem v. County*

21   *of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir.2000)) (internal quotation marks omitted).

22       Both Plaintiffs and Defendant rely on the six-part "economic reality" test to determine

23   whether a party is an employee or an independent contractor.  The parties provide no authority

24

indicating that this is the correct application of the economic realities test in the context of a dispute over whether a party is a volunteer or an employee for a public employer.  Review of other cases suggests that reliance on this six-part test is misplaced, and, in the context of volunteer/public employer FLSA disputes, courts conduct a more holistic analysis of the economic realities of employment while deferring to the Department of Labor's ("DOL") interpretation of the relevant statutory provisions.  *See, e.g.*, *Brown v. New York City Dep't of Educ.*, 755 F.3d 154, 163 (2d Cir. 2014) ("[O]ur ultimate determination is based on the totality of circumstances."); *Mendel v. City of Gibraltar*, 727 F.3d 565, 569 (6th Cir. 2013) ("'The issue of the employment relationship does not lend itself to a precise test, but is to be determined on a case-by-case basis upon the circumstances of the whole business activity.'"); *Purdham*, 637 F.3d at 433 ("[T]he economic realities test 'is of limited utility in determining whether an individual is an employee, as opposed to a volunteer.'"); *Martinez v. Ehrenberg Fire Dist.*, No. CV-14-00299-PHX-DGC, 2015 WL 3604191, at *2–3 (D. Ariz. June 8, 2015); *Vonbrethorst v. Washington Cnty., Idaho*, No. CV06-0351-SEJL, 2008 WL 2785549, at *4 (D. Idaho July 15, 2008).

### b.  Plaintiffs do not Fall Within the FLSA Public Sector Volunteer Exception

At the outset, it is important to note that the fact that Plaintiffs were labeled as "volunteer" firefighters has little relevance to the Court's FLSA analysis.  Courts have long noted that "the terms the parties use are not controlling when we inquire whether an individual is an employee or a volunteer under the FLSA."  *Purdham*, 637 F.3d at 429; *see also Walling*, 330 U.S. at 150 ("[I]n determining who are 'employees' under the Act, common law employee categories or employer-employee classifications under other statutes are not of controlling significance.").

Defendant argues that Plaintiffs were exempt from the FLSA's minimum wage and overtime provisions because they were "volunteers" and not employees pursuant to 29 U.S.C. § 203(e)(4)(A).  (Dkt. No. 43 at 7.)

That statutory provision provides that:

The term "employee" **does not include any individual who volunteers to perform services for a public agency** which is a State, a political subdivision of a State, or an interstate governmental agency, if—

(i) the individual receives no compensation or **is paid expenses, reasonable benefits, or a nominal fee** to perform the services for which the individual volunteered; and

(ii) such services are not the same type of services which the individual is employed to perform for such public agency.

29 U.S.C. § 203(e)(4)(A) (emphasis added).

The DOL has interpreted these FLSA exemptions for volunteers and has promulgated regulations that further clarify these exemptions.[1]  29 C.F.R. § 553.101(a) defines volunteers generally as "[a]n individual who performs hours of service for a public agency **for civic, charitable, or humanitarian reasons**, without promise, expectation or receipt of compensation for services rendered."  29 C.F.R. § 553.101(a) (emphasis added).

---

[1] Neither of the parties addressed whether the term "volunteer" is ambiguous and thus merits *Chevron* deference.  The Ninth Circuit has not directly addressed the issue, but the Court agrees with analyses conducted by sister circuits that the term is ambiguous and thus merits *Chevron* deference.  "When Congress has 'explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute."  *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) (citation omitted) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44 (1984)).  The legislative history clearly indicates that "Congress specifically directed DOL to promulgate regulations to implement the statutory volunteer exception."  *Brown.*, 755 F.3d at 162 n.4; *see also McKay v. Miami-Dade Cnty.*, 36 F.4th 1128, 1137 (11th Cir. 2022).  As such, the Court defers to the DOL's regulations interpreting these volunteer provisions unless they are arbitrary and capricious or clearly contradict the statute.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 43, 46) - 10

29 C.F.R. § 553.104(a) further provides that:

> Individuals who are not employed in any capacity by State or local government
> agencies . . . are considered volunteers and not employees of such public agencies
> if their hours of service are provided with no promise expectation, or receipt of
> compensation for the services rendered, except for reimbursement for expenses,
> reasonable benefits, and nominal fees, or a combination thereof, as discussed in §
> 553.106.

29 C.F.R. § 553.104(a).

Finally, 29 C.F.R. § 553.106 provides that:

> (e) Individuals do not lose their volunteer status if they receive a nominal fee from
> a public agency. **A nominal fee is not a substitute for compensation and must
> not be tied to productivity**. However, this does not preclude the payment of a
> nominal amount on a "per call" or similar basis to volunteer firefighters. The
> following factors will be among those examined in determining whether a given
> amount is nominal: **The distance traveled and the time and effort expended by
> the volunteer; whether the volunteer has agreed to be available around-the-
> clock or only during certain specified time periods; and whether the volunteer
> provides services as needed or throughout the year**. An individual who
> volunteers to provide periodic services on a year-round basis may receive a nominal
> monthly or annual stipend or fee without losing volunteer status.
>
> (f) Whether the furnishing of expenses, benefits, or fees would result in individuals'
> losing their status as volunteers under the FLSA **can only be determined by
> examining the total amount of payments made (expenses, benefits, fees) in the
> context of the economic realities of the particular situation.**

29 C.F.R. § 553.106(e)–(f) (emphasis added).

The DOL has issued multiple opinion letters interpreting these regulations, which the

Court may consider.[2]  Agency opinion letters do not merit *Chevron* deference, *see Christensen v.*

*Harris Cnty.*, 529 U.S. 576, 587 (2000), but the Court may credit their interpretation to the extent

---

[2] The Court may also credit investigative findings by the U.S. Department of Labor's Wage and
Hour Division on summary judgment pursuant to Federal Rule of Evidence 803(8).  *See, e.g.*,
*Quinn v. Everett Safe & Lock, Inc.*, 53 F. Supp. 3d 1335, 1339 (W.D. Wash. 2014) (Finding that
DOL investigatory letter determining that a party committed violations of federal law fell under
the public records hearsay exception as the letter could be considered a factual finding from a
legally authorized investigation).

1   they are persuasive and thus deserving of *Skidmore* deference, *see id.* Where "'an agency

2   interprets its own regulation, even if through an informal process, its interpretation of an

3   ambiguous regulation is controlling under *Auer* unless plainly erroneous or inconsistent with the

4   regulation.'" *Marsh v. J. Alexanders LLC*, 905 F.3d 610, 623 (9th Cir. 2018) (quoting *Bassiri v.*

5   *Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006)). Contrary to Defendant's assertions, the Court

6   may rely on and interpret agency opinion letters at summary judgment as these are

7   interpretations of law, not fact. *See id*; *see also Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d

8   1228, 1238 (11th Cir. 2002).

9        DOL has previously advised that "[a] willingness to volunteer for 20 percent of the

10   prevailing wage for the job is also a likely indication of the spirit of volunteerism contemplated

11   by the 1985 amendments to the FLSA. This interpretation of 'nominal fee' applies equally in the

12   context of firefighters." U.S. Dep't. Labor, Wage & Hour Div., Opinion Letter (Sept. 17, 2007)

13   at *4. Working for more than 20 percent of prevailing wage is thus indicative of an employment

14   relationship. Additionally, the DOL has advised that "it is unlikely that 3,000 hours of service

15   (50+ hours per week) is 'volunteering' rather than employment." U.S. Dep't. Labor, Wage &

16   Hour Div., Opinion Letter (Aug. 7, 2006) at *5. And finally, the DOL, in interpreting its own

17   regulations has determined that "to the extent that payments are tied to productivity (e.g.,

18   payment of hourly wages for services rendered), are similar to 'piece rates,' or are comparable to

19   'production bonuses,' there is a greater likelihood that such fees are not nominal." U.S. Dep't.

20   Labor, Wage & Hour Div., Opinion Letter (Sept. 17, 2007) at *3.

21        Both parties have presented evidence that they believe merits summary judgment.

22   Plaintiffs assert that "there was a promise, expectancy, and receipt of pay for Plaintiffs' work as

23   firefighters, and Defendant has not provided evidence that Plaintiffs worked for civic, charitable,

24

1  or humanitarian reasons." (Dkt. No. 46 at 15–16.)  They allege that Plaintiffs worked for

2  compensation as a primary source of their income, that they relied on the income they received

3  from Defendant, and they were not paid on a "per call" basis, as discussed in the DOL

4  regulations.  (Dkt. No. 46 at 16.)  They also assert that Plaintiffs worked hours that were

5  inconsistent with a volunteer employment relationship[3] and that they received bonus payments

6  for completing a certain number of shifts.  (Dkt. No. 46 at 14–15.)  To support these assertions,

7  Plaintiffs cite to various documents in the record, including deposition testimony and notes from

8  Fire Chief Matthew Welander.[4]  (*See id.* at 16.)

9      Defendant, by contrast, argues that the payment that Plaintiffs received in return for their

10  services was a permissible "nominal fee" and not compensation.  (*See* Dkt. Nos. 43 at 7; 60 at 8.)

11  They further argue that "Plaintiffs are paid a set stipend per shift that they volunteer to take. This

12  stipend has nothing to do with the number of calls they respond to or how productive they are."

13  (Dkt No. 43 at 8–9.)  They also agree with Plaintiffs that "Plaintiffs in this case were paid a

14  nominal fee that would amount to $4.17 per hour."  (*Id.* at 9.)  While the Court must construe the

15  facts in Defendant's favor here, the Court ultimately concludes that there is no genuine dispute of

16  material fact and determines that Plaintiffs are entitled to summary judgment on their claim that

17

18  [3] Defendant asserts that Plaintiffs' Exhibits 6 and 7 in support of these assertions are inadmissible
   and thus we are unable to credit them at summary judgment.  (*See, e.g.*, Dkt. No. 60 at 10.)

19  Plaintiffs, in response, assert that these documents are self-authenticating because they constitute
   party admissions.  (*See* Dkt. No. 61 at 6.)  The Court finds that these documents are admissible

20  because "'[d]ocuments produced in response to discovery requests are admissible on a motion for
   summary judgment since they are self-authenticating and constitute the admissions of a party

21  opponent.'"  *Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1163 (E.D. Cal. 2015) (quoting *Anand
   v. BP W. Coast Products LLC*, 484 F.Supp.2d 1086, 1092 n.11 (C.D.Cal.2007)).

22  [4] Defendant also asserts that Exhibit 17, Fire Chief Welander's notes from his investigation, is
   inadmissible.  (Dkt. No. 60 at 11.)  Plaintiffs assert that these notes were produced by Defendant

23  and authenticated by Chief Welander in his deposition and as such they are admissible.  (Dkt. No.
   61 at 9.)  The Court finds that these documents have been properly authenticated and are

24  admissible.

1    Plaintiffs are not volunteers for purposes of 29 U.S.C. § 203(e)(4)(A) and, in fact, are employees

2    for purposes of the FLSA.

3           First, DOL's regulations interpreting § 203(e)(4)(A) clearly provide that volunteers are

4    "individual[s] who performs hours of service for a public agency **for civic, charitable, or**

5    **humanitarian reasons**." 29 C.F.R. § 553.101(a). Defendant argues that "whether Plaintiffs

6    relied on their volunteer stipends for income is irrelevant to either the economic realities test or

7    29 U.S.C. §203(e)(4)(A)." (Dkt. No. 60 at 12.) Defendant also attempts to rebut the evidence

8    put forward by Plaintiffs but does not affirmatively present evidence contradicting Plaintiffs'

9    assertions.

10          Plaintiffs argue and present evidence that they did not perform work for Defendant for

11   civic, charitable, or humanitarian reasons. They assert through affidavits that they did not sign a

12   Waiver/Resident Firefighter form. (Dkt. Nos. 48 at 2; 49 at 2.) These waivers explicitly

13   disclaim that volunteers are entering into an employment agreement. (*See* Dkt. No. 53-1 at 190.)

14   Plaintiffs also note through deposition testimony that they relied on their income from their

15   volunteer firefighter position, which would support Plaintiffs' claim that they did not volunteer

16   as a firefighter for civic, charitable, or humanitarian reasons. For example, Plaintiff Aponte

17   notes that he ended his employment with Walmart because his work as a firefighter "was taking

18   up too much of my time with shifts and I was making enough at West Mason that I didn't really

19   need to – to work at Walmart anymore." (Dkt. No. 51-1 at 310.) Lieutenant Byron Orme also

20   noted that Plaintiff Aponte "became the guy that was always at the fire department just making

21   money doing that." (Dkt. No. 51-1 at 306.) Plaintiff Self similarly asserted that she relied on her

22   position with the Defendant for income, and that it was her understanding that when she was

23   working with the Defendant that she was not a volunteer. (Dkt. No. 51-1 at 297–98.) And Fire

24

Chief Welander's notes indicate that he knew that Plaintiffs were reliant on their positions as firefighters for their primary income.  (Dkt. No. 51-1 at 238.)

Defendant's only evidence that purportedly contradicts this is an assertion by Lieutenant Byron Orme that the volunteer program was not intended to be a role for individuals seeking to earn a living.  (*See* Dkt. Nos. 60 at 11; No. 51-1 at 306).  However, this evidence, even if construed in Defendant's favor, does not indicate that Plaintiff Aponte had volunteered for civic, charitable, or humanitarian purposes.  In fact, it clearly indicates that Lieutenant Orme understood Plaintiff Aponte to have taken a position with Defendant for financial reasons.

Nothing in DOL's regulatory interpretation of 29 U.S.C. § 203(e)(4)(A) provides that a party must be solely motivated by civic, charitable, or humanitarian reasons to qualify as a volunteer.  "[H]uman actions are frequently informed by multiple reasons. . . . Thus, a person may provide a public agency with free services for genuine civic, charitable, or humanitarian reasons, at the same time that he acts for a variety of personal reasons."  *Brown*, 755 F.3d at 164; *see also Purdham*, 637 F.3d at 429 ("[W]hat is required is that the individual must be motivated by civic, charitable or humanitarian reasons, at least in part.").  Defendant, however, has offered no evidence that Plaintiffs were motivated by genuine civic, charitable, or humanitarian reasons and Plaintiffs have offered clear evidence that they were motivated by other financial reasons when they accepted positions with the Defendant.

Second, Plaintiffs' compensation is strongly suggestive of an employment relationship.  As previously noted, the DOL has advised that payment in excess of 20 percent of the prevailing wage is indicative of an employment relationship.  U.S. Dep't. Labor, Wage & Hour Div., Opinion Letter (Sept. 17, 2007) at *4.  It is undisputed that Plaintiffs were paid per shift an amount that would constitute a wage of $4.17 per hour.  Additionally, both parties agree that

1   volunteers received compensation from $15 per hour in 2018 to $20 per hour in 2019 to work at

2   the Ridge.  (*See, e.g.*, Dkt. No. 44 at 2).  The DOL also determined that firefighters employed

3   with Defendant during the same period, and thus earning the same compensation, earned more

4   than the DOL's 20 percent threshold under various scenarios and as such their payment could not

5   be considered a nominal fee.  (*See* Dkt. No. 51-1 at 228–30.)

6          Third, Plaintiffs were paid based on their "productivity."  Plaintiffs were paid based on

7   the type of shift they took, and their pay period varied based on the number of hours that they

8   worked.  The Court agrees, as the DOL concluded, that such payments were based on

9   productivity.  (*See* Dkt. No. 51-1 at 227.)  Payment was tied to their shift, an hourly unit of time,

10  and not "per call," as permitted by regulation.[5]  The "point system" payments discussed by

11  Plaintiffs in their briefing (*see* Dkt. No. 46 at 8) was also likely tied to worker productivity,

12  though this presents a closer issue.  The point system provided points, and ultimately additional

13  compensation, to individual volunteers if they completed certain activities and a certain number

14  of calls per year.  (*See* Dkt No. 51-1 at 208.)  While the DOL's regulations provide that the

15  FLSA does not "preclude the payment of a nominal amount on a 'per call' or similar basis to

16  volunteer firefighters," 29 C.F.R. § 553.106(e), the point system payments were, in practice, a

17

18

_____

19  [5] Defendant tries to distinguish the current case from *Mendel*, where the Sixth Circuit held that

20  "volunteer" firefighters were actually employees for purposes of the FLSA because they worked
    in contemplation of compensation and received $15 per hour payments for their services.  727 F.3d

21  at 571.  Defendant argues that Plaintiffs were paid a set stipend per shift, in contrast to the hourly
    workers in *Mendel*, and that this stipend has nothing to do with how productive they were.  (Dkt.

22  No. 43 at 8.)  The Court rejects this assertion.  Per-shift stipends were clearly based on temporal
    units of time (and not calls as permitted by regulation).  These stipend payments were tied to a

23  firefighter's productivity (e.g., the more shifts a firefighter took the more money they could
    receive).  In this respect, Plaintiffs are very similar to the firefighters in *Mendel* as they worked in

24  contemplation of compensation—each shift worked meant more compensation.  727 F.3d at 571.

payment for productivity in addition to the base payment per shift and more closely resemble a bonus.

Fourth, Plaintiffs' hours worked, considering the other evidence, do not suggest that they were engaged in volunteer activities. As the DOL has noted, working more than 3000 hours per year is more likely to indicate employment rather than volunteer services. *See* U.S. Dep't. Labor, Wage & Hour Div., Opinion Letter (Aug. 7, 2006) at *5. Plaintiffs have presented evidence that at least one plaintiff (Mr. Aponte) worked more than 3000 hours in 2019 and that Ms. Self was on track to exceed 3000 hours before her termination. (*See* Dkt. No. 46 at 15.) Chief Welander also noted in his deposition testimony that a career firefighter would work around 2600 hours per year. (Dkt. No. 51-1 at 275.) This "level of work is more consistent with employment than volunteer labor." *Martinez*, 2015 WL 3604191, at *4.

As such, in considering the totality of Plaintiffs' employment circumstances and the relevant DOL regulations and opinion letters, the Court finds that Plaintiffs were employees under the FLSA and GRANTS summary judgment to Plaintiffs on the issue of whether the Plaintiffs were employees as opposed to volunteers as provided by 29 U.S.C. § 203(e)(4)(A).

**E.     A Genuine Issue of Material Fact Precludes the Court from Finding that Plaintiffs were Employees under State Law**

a.   Legal Standard

The MWA was modeled after the FLSA. *Lafley v. SeaDruNar Recycling, L.L.C.*, 2007 WL 1464433, at *3 (Wash. Ct. App. May 21, 2007). Washington courts "may consider interpretations of comparable provisions of the Fair Labor Standards Act of 1938 as persuasive authority" when analyzing the MWA. *Inniss v. Tandy Corp.*, 7 P.3d 807, 811 (Wash. 2000). The MWA and the FLSA have similar definitions of the term "employee." *See* Wash. Rev. Code

§ 49.46.010(3) (defining the term employee to include "any individual employed by an employer.").

b.  State Law Exceptions to the MWA and Parallels to the FLSA

The MWA, like the FLSA, also has several exceptions to its definition of employee. Defendant has argued that Plaintiffs fall within two exemptions to the MWA. First the MWA exempts:

> Any individual engaged in the activities of an educational, charitable, religious, state or local governmental body or agency, or nonprofit organization **where the employer-employee relationship does not in fact exist or where the services are rendered to such organizations gratuitously.** If the individual receives reimbursement in lieu of compensation for normally incurred out-of-pocket expenses or **receives a nominal amount of compensation per unit of voluntary service rendered**, an employer-employee relationship is deemed not to exist for the purpose of this section or for purposes of membership or qualification in any state, local government, or publicly supported retirement system other than that provided under chapter 41.24 RCW;

Wash. Rev. Code § 49.46.010(3)(d) (emphasis added).

Second, the MWA exempts:

> Any individual whose duties require that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties;

Wash. Rev. Code § 49.46.010(3)(j).  Additionally, the MWA notes that:

> When an individual volunteers his or her labor to a state or local governmental body or agency and receives pursuant to a statute or policy or an ordinance or resolution adopted by or applicable to the state or local governmental body or agency reimbursement in lieu of compensation at a nominal rate for normally incurred expenses or receives a nominal amount of compensation per unit of voluntary service rendered such reimbursement or compensation shall not be deemed a salary for the rendering of services or for purposes of granting, affecting or adding to any qualification, entitlement or benefit rights under any state, local government or publicly supported retirement system other than that provided under chapter 41.24 RCW.

Wash. Rev. Code § 49.46.065.

1      Though many provisions of the MWA parallel those of the FLSA, the statutory

2   provisions of the FLSA referring to volunteers for public sector entities do not appear to

3   be similarly comparable to those of the MWA.  As such, the persuasive authority of DOL

4   regulations on the definition of "volunteers" is limited.  Wash. Rev. Code §

5   49.46.010(3)(d), for example, is not clearly analogous to the FLSA's public employer

6   volunteer provision.  To the extent that the FLSA and DOL's interpretations of nominal

7   fees are applicable, the Court could find, for the reasons articulated above, that payments

8   to Plaintiffs were not nominal and in fact indicated the presence of an employment

9   relationship.  Moreover, the Court's holistic FLSA economic reality analysis would also

10  seem to suggest that there was not an employer-employee relationship between Plaintiffs

11  and Defendant.  However, there is a genuine issue of material fact that precludes the

12  Court from finding as a matter of law that either party is entitled to summary judgment.

13          c.   Genuine Issue of Material Fact Precludes Summary Judgment

14      Defendant claims that Plaintiffs were exempt from the MWA pursuant to Washington

15  Revised Code. § 49.46.010(3)(j).  The Supreme Court of Washington has interpreted Washington

16  Revised Code. § 49.46.010(3)(j) as requiring courts to inquire "whether a particular worker falls

17  into a class that either (1) resides or sleeps at the place of his or her employment or (2) otherwise

18  spends a substantial portion of his or her work time subject to call, and not engaged in active

19  duties." *Berrocal v. Fernandez*, 121 P.3d 82, 87–88 (Wash. 2005).  Defendant asserts that

20  Plaintiffs' duties required them to reside in or sleep at the fire station while subject to call.  (Dkt.

21  No. 43 at 13.)  Plaintiffs assert that they did not sign a Waiver/Resident Firefighter form (Dkt.

22  Nos. 48 at 2; 49 at 2), which Defendant does not rebut.  Additionally, Defendant asserts that

23  Plaintiffs' affidavits contradict their sworn deposition testimony.  (Dkt. No. 56 at 9.)  Indeed,

24

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT (DKT.
NOS. 43, 46) - 19

1   Defendant has introduced deposition testimony indicating that both Plaintiffs had, in fact, slept

2   while on call.  (*See generally* Dkt. No. 57.)  However, contrary to Defendant's assertions, these

3   snippets of deposition testimony do not directly contradict Plaintiffs' assertions that they did not

4   sign a Waiver/Resident Firefighter form and therefore that their duties did not require them to

5   reside or sleep at their place of employment.  Furthermore, as previously noted, while "[t]he

6   general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit

7   contradicting his prior deposition testimony," this rule only applies if the district court, in fact,

8   determines that Plaintiffs' affidavits were a "sham."  *See Kennedy v. Allied Mut. Ins. Co.*, 952

9   F.2d 262, 266–67 (9th Cir. 1991).  The Court does not find that Plaintiffs' affidavits were sham

10  affidavits.

11          As such, there is a genuine issue of material fact, whether Plaintiffs' duties required them

12  to reside in or sleep at their place of employment, and the Court DENIES summary judgment to

13  both parties on the issue of whether Plaintiffs were employees under the MWA.

14  **F.      The Court Declines to Exert Jurisdiction Over Plaintiffs' Wrongful Discharge
            Claims**

15          The Court declines to exercise supplemental jurisdiction over Plaintiffs' wrongful

16  discharge claims because they do not share a common nucleus of operative facts with their FLSA

17  claims.

18          Federal courts may exercise jurisdiction over pendent state law claims that share a

19  "common nucleus of operative facts" with the underlying federal claim over which the court has

20  jurisdiction.  *See Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley*

21  *Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003); *see also* 28 U.S.C. § 1367(a)

22  ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so

23

24

related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

Here the Court agrees with Defendant that the only link between Plaintiffs' FLSA claims and wrongful discharge claims "is the general employer-employee relationship between the parties." *Lyon v. Whisman*, 45 F.3d 758, 762 (3d Cir. 1995). Indeed, Plaintiffs admit as much in their briefing. (*See* Dkt. No. 52 at 13.) ("Plaintiffs claim wage and hour violations and wrongful termination in violation of public policy for making safety complaints. **All claims arise from Plaintiffs' employment with Defendant** and is focused on the same evidence and witnesses.") (emphasis added). "Federal courts have been reluctant to exercise supplemental jurisdiction over state law claims and counterclaims in the context of a FLSA suit where the only connection is the employee-employer relationship." *Williams v. Long*, 558 F. Supp. 2d 601, 604 (D. Md. 2008).

Plaintiffs seize on common judicial language interpreting the supplemental jurisdiction statute that provides that "[a] state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). Plaintiffs, however, provide no authority to support their argument that the Court may exert jurisdiction over supplemental state law claims solely because they would normally be heard together even though they do not share a common nucleus of operative fact. And regardless, the state law claims are still required as a matter of law to be closely related to the underlying federal claims.

Plaintiffs' wrongful discharge claims "involves critical facts in addition to proof of an employment relationship within the meaning of the FLSA." *Krause v. Cherry Hill Fire Dist. 13*,

1   969 F. Supp. 270, 283 (D.N.J. 1997).  Plaintiffs' equitable complaints notwithstanding, the Court

2   cannot exert jurisdiction over state law cases that do not share a common nucleus of operative

3   facts and Plaintiffs have not established that such facts exist in this case.

### G.   Unjust Enrichment Claims

"Unjust enrichment is the method of recovery for the value of the benefit retained absent

any contractual relationship because notions of fairness and justice require it."  *Young v. Young*,

191 P.3d 1258, 1262 (Wash. 2008).  Unjust enrichment under Washington law requires proof of

three elements—"(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's

expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without

payment."  *Norcon Builders, LLC v. GMP Homes VG, LLC*, 254 P.3d 835, 844 (Wash. App. Ct.

2011).

Plaintiffs and Defendant do not dispute that the first and second prongs of this standard

have been met.  Defendant's primary argument on this point is that that, since Plaintiffs were

volunteers, the circumstances do not make it unjust for the Defendant to retain the benefit of

their services.  (Dkt. No. 43 at 15.)

Defendant argues in passing that the presence of a contract makes a remedy of unjust

enrichment inappropriate.  (*Id.*)  Plaintiffs counter that there were no signed employment

contracts and therefore unjust enrichment is not inappropriate.  (Dkt. No. 52 at 17.)  Plaintiffs

also argue that where the validity of the contract is under dispute, unjust enrichment is

warranted.  (*Id.*)  Plaintiffs, however, cite to federal cases interpreting the New York common

law of enrichment, to support these claims.  On review of Washington law, it is clear that the

presence of a valid contract, either express or implied, prevents recovery under a theory of unjust

enrichment.  *See, e.g.*, *Kersteter v. Concrete Sch. Dist.*, 2022 WL 766218, at *5379 (Wash. App.

Ct. 2022); *Hurlbut v. Crines*, 473 P.3d 263, 270 (Wash. App. Ct. 2020).  However, where the

1    validity of a contract is in question, there is no bar to bringing an unjust enrichment claim.

2    *Hyytinen v. City of Bremerton*, 185 Wash. App. 1015 (2014) (noting that if a contract was

3    voidable for mutual mistake of fact, then no contract would bar an unjust enrichment claim).

4           It is undisputed that Plaintiffs accepted terms to work for Defendant for $50 per 12-hour

5    shift.  Since the Court finds that Plaintiffs were employees under the FLSA, Plaintiffs' oral

6    employment contracts are unenforceable, and Plaintiffs would be able to bring a claim for unjust

7    enrichment to the extent they otherwise lacked a remedy at law and were permitted to do so

8    within the statute of limitations on unjust enrichment claims.  *See Seattle Pro. Eng'g Emps.*

9    *Ass'n v. Boeing Co.*, 991 P.2d 1126, 1134, *opinion corrected on denial of reconsideration*, 1

10   P.3d 578 (Wash. 2000) (noting that where a party had a remedy under the law for minimum

11   wage violations, they could not pursue a claim for unjust enrichment).  Willful FLSA violations

12   have a three-year statute of limitations.  *See* 29 U.S.C. § 255(a).  Violations of the MWA also

13   have a three-year statute of limitations.  *Seattle Pro. Eng'g Emps. Ass'n*, P.2d at 1133.  And,

14   under Washington law, the statute of limitations for unjust enrichment is also three years.  *See*

15   *O'Donnell/Salvatori Inc. v. Microsoft Corp.*, No. C20-882-MLP, 2021 WL 535128, at *7 (W.D.

16   Wash. Feb. 12, 2021).  As such, the statute of limitations for unjust enrichment and Plaintiffs'

17   statutory claims completely overlap.

18          While the Court has determined that Plaintiffs were employees under the FLSA, the

19   Court is not, at this time, able to determine whether Plaintiffs were employees or volunteers for

20   purposes of the MWA.  This precludes the Court from finding as a matter of law for Defendant

21

22

23

24

that Plaintiffs unjust enrichment claims must be dismissed.[6]  As such, the Court DENIES

Defendant's motion for summary judgment on this issue.

**IV      CONCLUSION**

Accordingly, and having considered the parties' motions (Dkt. Nos. 43, 46), the briefing

of the parties, and the remainder of the record, the Court finds and ORDERS as follows:

1. Plaintiffs' motion for summary judgment as to the waiver of Defendant's affirmative defenses is DENIED.
2. Plaintiffs' motion for summary judgment as to whether Plaintiffs were employees for purposes of the FLSA is GRANTED and Defendant's motion for summary judgment on the same issue is DENIED.
3. The Court DENIES both parties' motions for summary judgment on the issue of whether Plaintiffs were employees under the MWA because there is a genuine dispute of material fact.
4. The Court DENIES Defendant's motion for summary judgment as to Plaintiffs' unjust enrichment claim.
5. The Court DISMISSES Plaintiffs' claims for wrongful discharge since the Court does not properly have jurisdiction over them.

Dated this 21st day of November, 2022.

David G. Estudillo
United States District Judge

---

[6] If it is later determined that Plaintiffs were employees for purposes of the MWA, the Court would likely find that Defendant is entitled to judgment as a matter of law on Plaintiffs' unjust enrichment claims since Plaintiffs would have an adequate remedy at law (the MWA) to address their allegations of minimum wage violations.